## Clark County v. Ecton.

(Decided November 27, 1912).

### Appeal from Clark Circuit Court.

1. Turnpike Companies—Indictment Against — Judgment — When Cannot be Assailed Collaterally.—The Clark and Montgomery Turnpike Company having been indicted in the name of the Clark and Montgomery Turnpike Road Company, and having appeared and defended the judgment is not void and cannot be assailed collaterally.

2. Judgment.—When One Bound By Although Not a Party.—One who defends an action in the name of another is bound by the judgment although not a party to the action.

3. Judgment—When One Will Not Be Heard to Set Up Invalidity.— A person who was not a party to the action but acquiesced in the judgment, treating it as valid, and induced another to pay out money upon the assumption that the judgment is valid, will not be heard to set up the invalidity of the judgment to the prejudice of the person so misled.

JOHN M. STEVENSON and S. T. DAVIS for appellant.

PENDLETON, BUSH & BUSH for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

Previous to the year 1874, the Clark and Montgomery Turnpike Road Company owned a turnpike in Clark County five miles in length and running from the Red River and Iron Works pike to the Prewitt pike. In that year in a proceeding against the corporation, a judgment of sale was rendered; a sale was made pursuant thereto of the turnpike property; and in 1876 the road-bed and all property of the company were conveyed to the purchasers, Burgess Ecton and others. They for a

number of years held the road as partners. In 1876 Burgess Ecton sold his interest in it, being 16-53, to C. B. Ecton. In 1888 the Kentucky Union Railroad Company was building a line of railroad which cut this turnpike in several places, and to adjust the damages entered into negotiations with the owners, the result of which was that it entered into a written agreement with C. B. Ecton by which it agreed to pay him $1,000.00 and to repair all damages to the road, and reconstruct same in good condition after the railroad was built. It was further agreed that in case the railroad should purchase the remainder of the property at the rate of $5,000.00 for the whole from the other owners that Ecton should remain a joint owner of the road to the extent of 16-53 as before. Pursuant to the agreement the railroad company bought out all the other partners in the turnpike on the basis of $5,000.00 for the whole road; and on October 27, 1888, the other owners of the property joined in conveying it to C. H. Stoll, who was the attorney and president of the railroad company. On December 26, 1888, Ecton and Stoll organized a corporation known as the Clark and Montgomery Turnpike Company, the capital stock of which was $50,000.00, much of which was never issued. $15,900 of stock was issued to C. B. Ecton and C. H. Stoll, and there were also issued to them twenty-one bonds secured by mortgage amounting in the aggregate to $10,600.00. In the spring of 1889, the railroad was built. It cut the pike in not less than five places, and destroyed the remainder of it by the heavy hauling necessitated in the construction work. The railroad company completed its line in the year 1889, but did not repair the turnpike and left it in a ruined condition. In 1890 Ecton individually brought a suit against the railroad company claiming damages in the sum of $10,-000.00 for its failure to carry out its contract, and its leaving the pike absolutely unfit for travel. The railroad company failed soon after this, and this suit was never brought to trial. But in the same year the grand jury of Clark County instituted proceedings in the name of the Commonwealth against the corporation for a forfeiture of its charter on account of its failure to keep the road in passable condition for public travel. The summons in this case was served on C. B. Ecton. The case came on for trial on May 5, 1891 and both sides announcing ready, there was a verdict of the jury finding the defendant guilty and a judgment of the court upon

the verdict forfeiting the charter of the company and all its franchises, and transferring the property to Clark County to be used and maintained by the county as a public highway. By the judgment, the county court of the county was required to keep and maintain the road as a public highway, and this judgment was certified to the county court. On May 11, 1891, the county court appointed a committee to ascertain and report as to the validity of the forfeiture, and as to whether the property could be disposed of by the court to C. B. Ecton or others on terms satisfactory to the court, and to report to the court what terms could be made. At this juncture Ecton made a proposition to the court in substance that if the court would turn the turnpike over to him and his associates who were about to form a new corporation, and the county would pay $2,900.00 in money, he and his associates would furnish the remainder of the money necessary to put the road in repair and then divide the stock in proportion to the amount expended by each. The county court agreed to Ecton's proposition. He and his associates organized the Winchester and Little Stoner Turnpike Road Company, and at its October term, 1891, the county court accepting Ecton's proposition, made the following order:

"On motion of the Winchester and Little Stoner Turnpike Road Company, though its agent, C. B. Ecton, it is ordered that the roadbed of the old Clark and Montgomery Turnpike Company, now in possession of Clark County be and the same is turned over to said company, upon conditions hereinafter stated, and that the sum of $580.00 per mile or $2,900 for the whole road, be and the same is hereby subscribed by Clark County, to the capital stock of said company, to be due and payable upon the terms and conditions hereinafter set out. * * * Said subscription shall be made through the county judge, and payable upon his order, at the completion of each mile of said road, upon the certificate of a competent engineer, that said road has been built or repaired so that it justifies the aforesaid requirements; in the report a committee of this court must concur.

"This subscription is binding only on this condition that the president shall file with the county judge that there has been paid into the company's treasury a sufficient amount derived from private subscription to pay the whole cost of construction, and repairing of said road including the cost of additional right of way,

bridges, toll houses, repairs and all other expenses, incident to said road, the same to be determined by estimate of competent engineer; at the completion of the work said road shall be capitalized at an amount equal to the sum expended upon same for the above purpose; $2,900.00 of which stock shall belong to Clark County the roadbed herein given the said company becoming the property of the company, without any estimate as to its value.    The stock in said company after same is completed belonging to Clark County, shall be held and controlled as stock in other companies now owned by the county.    This order shall not be binding and no money at all shall be paid hereunder until bond with good and sufficient security by one or more of the private individuals owning stock therein, being filed with the county judge to the effect that the whole of this road be constructed and repaired as herein required within eight months from this date.''

Ecton and his associates furnished the necessary money over and above the $2,900.00 subscription by the county the total amount spent being about $9,000.00; the pike was repaired and used as a toll road until the year 1897, when the county court decided to make it a free turnpike, and being unable to agree with the other owners, a condemnation suit was had, which resulted in a judgment in 1899, and since that time the road has been a free turnpike and controlled by the Clark County Court.    On December 13, 1900, Ecton brought this suit against Clark County in which he shows that he is the owner of 6 2-6 of the mortgage bonds above referred to issued January 1, 1889, by the Clark and Montgomery Turnpike Company, each of the bonds being for $500. He asserted a lien against the property which he prayed the court to enforce.    The case was not tried until January, 1911, the trial resulting in a judgment against the county for $1,280 with interest from February 20, 1889 subject to a credit of $429.53.    From this judgment Clark County appeals.

It will be observed that the old corporation which owned the property previous to the year 1876 was styled the Clark and Montgomery Turnpike Road Company. That corporation went out of business in 1876. The road was afterwards managed and held by a firm until it passed into the hands of Ecton and Stoll, who in December, 1888, organized a new corporation which was styled the Clark and Montgomery Turnpike Company. The

only difference between the name of this company and
the name of the old company was the omission of the
word "road." In the condemnation proceedings had in
1891 the defendant was styled the Clark and Montgom-
ery Turnpike Road Company, and it is insisted that the
judgment was against the old company and was void
as to the new company which in fact owned the road. But
this objection cannot be sustained on a collateral attack
of the judgment. The old company had been out of
business since 1876. C. B. Ecton on whom the process
was served had nothing to do with the old company, and
W. M. Beckner who was the attorney who defended, was
the attorney for the new company. The record shows
that the defendant appeared, and we must assume now
that the variance in the name was treated as immaterial.

It is also insisted that although the process there was
served on C. B. Ecton, he was not a party to the proceed-
ing, and that the judgment does not affect him as a bond
holder for this reason. He testified that W. M. Beckner
was his attorney. The rule is that one who defends a
suit in the name of another is bound by the judgment.
(Schmidt v. Louisville R. R. Co., 99 Ky., 143.) But pass-
ing this we have no doubt under the proof that Ecton
acquiesced in this judgment and by his conduct led the
Clark County Court to understand that he acquiesced in
it. He made several propositions to the Clark County
Court in all of which it was assumed that the judgment
was valid. The arrangement which he finally concluded
with the Clark County Court was made without any
intimation by him that he had any claim against the
property as bond holder. By this arrangement he in-
duced the county to put up $2,900.00 while he and his
associates agreed to put up the remainder that might be
necessary to put the road in good condition, it being
agreed that the stock of the company was to belong to
the county and those who put up the money in propor-
tion to the amount of money put up by each respectively.
Clark County would not have put $2,900.00 in this road
if Ecton had asserted a first lien on it as mortgage
holder, and he knew it. The road was ruined; the order
shows that the roadbed was turned over to the new com-
pany as of no value. If there was any defect in the form
of the proceedings, it could then have been corrected. As
things stood Ecton's bonds were worthless; for the road-
bed in the condition in which it had been left by the
railroad company, was of no value. Ecton lived on the

road and wanted a good road. To secure it, he induced the county to put money into it upon the terms indicated in the order. He then did not assert any claim against the property as bond holder. After inducing the Company to make this investment, which it clearly did upon the idea that the property had passed to it absolutely under the order of condemnation, he is now estopped to set up any claim against the property on account of the bonds above referred to.

If the county had not by the proceeding had in 1899 converted this pike into a free turnpike, can it be believed that it ever would have occurred to Ecton to set up his bonds against the Winchester and Little Stoner Turnpike Road Company, or his associates in that company who had furnished the money with which the road was reconstructed? Certainly the stockholders in this company including Clark County had put their money into it upon the ground that the road when reconstructed was their property. If Ecton could not have asserted his claim against the Winchester and Little Stoner Turnpike Road Company or his associates, the stockholders in that company, manifestly he cannot assert it now against Clark County.

Judgment reversed and cause remanded with directions to the circuit court to dismiss the petition.