## Collins v. Adams.

(Decided December 9, 1915.)

### Appeal from Knott Circuit Court.

1. Quieting Title—Proceedings and Relief.—To maintain an action to quiet title to land, plaintiff must prove in himself both title to and possession of same.
2. Deeds—Execution and Delivery.—The execution and delivery of a deed divests grantor of, and vests grantee with, title to the land described therein.
3. Deeds—Conditional Redelivery of Unrecorded Deed.—Conditional redelivery of an unrecorded deed by the grantee to the grantor, does not revest the title in grantor.

HALE & NEWMAN for appellant.

S. J. KILGORE and J. D. SMITH for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellant, G. A. Collins, on September 28th, 1911, began this action in the Knott circuit court against ap-

pellee; Watson Adams, to quiet title to one hundred acres of land in Knott county patented to him January 15th, 1891, by the Commonwealth of Kentucky. Appellee defends by denying both the title and possession of appellant, and asserting superior title in himself to a portion of the land covered by appellant's patent. By an amended petition appellant also asserts title to the contested land by adverse possession for more than fifteen years.

After completing the issue and taking proof, the case was submitted, and the lower court dismissed appellant's petition, and adjudged appellee to be the owner of the land. Counsel for appellant argues with much force, but against the weight of the testimony, that appellee's title is not sufficient, but he does not notice in his brief the matter fatal to his cause of action, which is urged by counsel for appellee, and amply sustained by the evidence, and upon which the lower court might have, and probably did, rest its judgment.

Under section 11 of the Kentucky Statutes authorizing appellant's action, he must have title to and actual possession of the land to which he desires the title quieted. Under the proof he had neither title nor possession at the time he instituted this action, nor any time thereafter.

The evidence of appellant's son-in-law, Noah Amburgey, proves that probably before this action was instituted, certainly before the judgment was rendered, appellant executed and delivered to said Amburgey a deed for the land in controversy. This deed was not lodged for record. Amburgey, however, held the deed in his possession until the morning of the day he gave his deposition in this case for appellee, after having disregarded a subpoena and having been forced to appear to testify by attachment. He says he returned the deed to appellant that morning. When asked by counsel for appellee if he would get the deed and file it as a part of his deposition, he having professed entire ignorance of its date, said he would do so if appellant would let him have the deed back. He was then requested to ask appellant, who was present, for the deed, and after having done so, was asked to state what appellant had said in response to his request for the deed. He stated that appellant said: "No, sir, hav'nt got it, and if I had it you could not get it." Witness was also asked by counsel for appellee: "Did the plaintiff, Green Collins, ever make you

a deed covering the land in dispute?" To which he answered: "Green made me a deed when we thought this suit was settled with Watty, but on finding the same was not settled, I give the deed back to Green and hav'nt got any claim to it until it is decided." He was then asked: "Is it understood between you and Green that if he wins the suit you are to fall owner of same?" To which he responded: "Well, yes."

Appellant was present and heard this testimony of his son-in-law, Noah Amburgey, and not only did not go on the stand to deny or explain it, but the record here shows that he refused to file this deed he had made to Amburgey, although a rule was issued by the court upon appellee's motion requiring him to file the deed, and, so far as this record discloses, he is still in contempt of court therefor. The execution and delivery of the deed by appellant to Amburgey deprived appellant of the title to the land in controversy, and vested it in Amburgey. If this deed was made before the filing of this suit by appellant, which seems from the testimony to have been the case, but upon which question the evidence is not clear, then unquestionably appellant had no title to the land, and could not have maintained this suit, nor do we think it improves his position if the deed were made after the suit was filed, and before the judgment was rendered, as he could not have prosecuted this suit from the time he made the deed.

That the return of the deed by Amburgey to appellant was not made in good faith seems certain, because Amburgey admits that the deed was not surrendered until just before he was forced to testify for appellee, and that when it was redelivered to appellant, it was understood between him and appellant that if the appellant should win the suit for the land in controversy, he (Amburgey) would "fall owner of same." This was, in fact, no delivery at all; it was a mere subterfuge to permit Amburgey, during the pendency of this action, to testify that he didn't have any deed. The return of the deed under such circumstances certainly could not restore to appellant nor divest Amburgey of the title. 13 Cyc., 723.

Our conclusion that appellant failed to establish in himself title to the land in controversy disposes of this case, and dispenses with the necessity of an examination of the other questions presented by the record and urged by counsel.

The judgment is affirmed.