### Amburgey v. Adams, et al.

(Decided December 1, 1922.)

#### Appeal from Knott Circuit Court.

1. Parties—Parties in Interest—Conflict of Interest.—A real party in interest to a suit, though not one of record, will not be allowed, in a subsequent judicial proceeding, to take a position in conflict

with the position taken by him in a former proceeding, where the latter position is to the prejudice of the adverse parties, and the parties and questions involved are the same.

2. Estoppel—One Estopped from Litigating Question That Could Have Been Settled in Former Action.—One not a formal party who defends or prosecutes an action by employing counsel, paying costs and doing those things that are ordinarily done by a formal party to an action, is estopped from again litigating the questions that were or could have been determined in the former proceeding.

3. Estoppel—Action Against Same Parties in Former Suits.—One who acquired a deed to a tract of land from his father-in-law, pending a contest between his father-in-law and another over the title to the land, and who assisted in the prosecution of his father-in-law's claim of title, consulting with witnesses and counsel and paying part of the costs of the suit, with the understanding that, should his father-in-law win the suit, he would become the owner of the land, is, after an adverse decision to his father-in-law's claim, estopped from asserting a claim to the land, in his own name, against the same parties.

A. J. MAY, R. H. AMBURGY, JOE HALL and D. G BOLEN for appellant.

S. J. KILGORE and J. D. SMITH for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

Noah Amburgey claims to be the owner and entitled to the possession of about twenty-two acres of land in Knott county. He sought an adjudication of his claim in an action filed in the Knott circuit court against Watson Adams, J. D. Smith and S. J. Kilgoré. On the hearing in that court Watson Adams was adjudged to be the owner of the surface and J. D. Smith and S. J. Kilgore the owners of the minerals thereunder. On this appeal Amburgey insists that the judgment is erroneous: First, because it is contrary to the opinion of this court in Collins v. Adams, 167 Ky. 228; and, second, because the evidence adduced in this case proves the legal title in him.

Appellees contest both assignments of error and, in addition, rely on an equitable estoppel, the ground therefor being appellant's participation in the former suit of Collins v. Adams, *supra*. In that case the land in dispute here was the subject of litigation, and G. A. Collins, the father-in-law of appellant, claiming to be the owner of it, sued Watson Adams, one of the appellees,

for possession. The circuit court decided that Adams was the owner of the land. In the proof in that case it was shown that Collins, pending the litigation, had conveyed the land to Noah Amburgey, and that Amburgey, on ascertaining that the suit had not been settled, had redelivered the deed to Collins. On the appeal to this court it was held, and quite properly so, that the return of the deed did not reinvest Collins with any right or title that he had therein attempted to convey, and in view of that effect of the deed, this court affirmed the judgment, deeming it unnecessary to examine the other questions presented in the record.

It is first contended, as we have said, that the opinion in that case is tantamount to an adjudication favorable to the contention of appellant here. The utter unsoundness of that argument is demonstrated by a reference to the judgment of the circuit court in that case, wherein Watson Adams was adjudged to be the owner of the land. It is true that in the opinion of this court, affirming that judgment, it is stated, in substance, that whatever interest G. A. Collins had in the land passed to Amburgey and was not reinvested in Collins by the return of the deed. But it was not held that Amburgey was the owner of the land, and the most favorable construction, from appellant's standpoint, that can be placed on the ruling of this court, is that as between Watson Adams and G. A. Collins the former was the owner of the land. Certainly it is not susceptible of the construction that appellant seeks to give it.

In support of the second contention appellant relies on a patent issued to G. A. Collins by the state of Kentucky, of date January 15, 1891, and a deed from Collins to appellant; also on the testimony of Collins, who said that the deed under which Adams claimed did not cover the land in dispute. That witness testified that the deed under which appellant claims, as surveyed, overlaps the land of Adams, but he further said that as it called for the Adams line, it would not, under a correct survey, overlap. He also stated that Watson Adams at one time recognized his ownership of the land by asking for some timber on it, and at another time Adams and his wife offered to buy it. It is said that this is all the evidence in the record relative to the location of the two surveys, each of which, according to the parties claiming under them, includes the

twenty-two acres in controversy. There is, however, some evidence to the effect that, in acquiring another tract of land adjoining the land in dispute, appellant accepted a deed which might be construed as recognizing Watson Adams' line as he claims it exists in this action. But without regard to that circumstance, and accepting the testimony of G. A. Collins as constituting the only proof in the record relative to the location of the two surveys, it seems doubtful to us that the burden assumed by appellant, in instituting this suit and asserting title in himself, was fairly met by the evidence. The testimony of Collins is in general terms and not sufficiently definite as to the location of appellant's survey to be free from doubt or speculation. Surely it lacks that certainty and accuracy necessary to a definite location of surveys and boundary lines, and, to our minds, under the most favorable interpretation is of questionable efficacy.

But the necessity of deciding the question just referred to is, in our judgment, obviated by the plea of estoppel relied on by appellees. On that feature of the case it is made to appear that Amburgy was one of the real parties in interest in the suit between Collins and Adams. He is shown to have assisted in the trial of that case, consulted with the witnesses and the attorneys representing Collins, and, at one time, to have been in control of the litigation. Furthermore, it appears that he paid some of Collins' costs incurred in prosecuting the suit, although he claims that he merely advanced the money to Collins. The evidence shows that it was understood between him and Collins that he would receive the land as a gift from his father-in-law if the latter won the suit. Hence his activity in the litigation to the extent of conferring with witnesses, consulting with counsel, and, in a large measure, directing the course and policy of that suit. He admitted that "I was to get the land provided G. A. Collins gained" the suit. When asked whether he commenced to claim the land as soon as he heard of the decision of the Court of Appeals in the first case, he replied, "Yes, because I was informed that the Court of Appeals merely said that it was my land." Collins testified that he gave the deed to the land in dispute to appellant, and his reason for so doing, as he recounts, was that Amburgey had helped him and had acted as his agent while he was in jail at Catlettsburg in a suit against Tandy Marlin.

From the foregoing it will be observed that appellant's claim of ownership rests on a deed of gift from his father-in-law, delivered to appellant pending the litigation between his father-in-law and one of the appellees, in which the father-in-law, with the assistance and largely under the direction of appellant, was asserting title in himself. It is also to be observed as a relevant fact that, in furtherance of the effort to establish the claim of Collins, appellant disclaimed any interest in the land under the secret deed that he was forced to disclose on cross-examination, and, after the disclaimer, continued his efforts to establish title in his father-in-law. The question then is, should he be permitted now to renew the litigation in his own name under a claim of title derived from his father-in-law? We think not. Nor is it a vital factor to the inquiry that the opinion of this court in the first case was based on Collins' action in divesting himself of whatever title he had by reason of the execution and delivery of the deed to appellant, for the judgment of the lower court was affirmed, and that judgment was manifestly based on the merits of the claims advanced by Collins and Adams, independent of the secret deed to appellant. It is in full force and effect, and, while appellant has been deprived of a determination of the merits of Collins' claim—in fact, appellant's claim—on appeal, he alone is responsible for the deprivation, and he must, therefore, be held bound by the judgment of the circuit court.

It is the general rule that a real party in interest, though not one of record, will not be allowed, in a subsequent judicial proceeding, to take a position in conflict with the position taken by him in a former proceeding, where the latter position is to the prejudice of the adverse parties, and the parties and questions involved are the same. And another familiar rule is that one, though not a party, who defends or prosecutes an action by employing counsel, paying costs and doing those things which are ordinarily done by a party to an action, will not be permitted again to litigate the questions that were or could have been determined in the former proceeding on the pretext that he was not a formal party to that proceeding. 10 R. C. L., page 702; Loeb v. Struck, 19 Ky. Law Rep. 935; Schmidt v. L. C. & L. Ry. Co., 99 Ky. 143; Heavrin, by, et al. v. Lack Malleable Iron Co., 153 Ky. 329.

In Bridges, etc. v. McAllister, 106 Ky. 791, quoting from Freeman on Judgments, section 174, this court said: "Neither the benefits of judgments on the one side nor the obligations on the other are limited exclusively to parties and their privies. Or, in other words, there is a numerous and important class of persons who, being neither parties upon the record nor acquirers of interest from those parties after the commencement of the suit, are nevertheless bound by the judgment. Prominent among those are persons on whose behalf and under whose direction the suit is prosecuted or defended in the name of some other person."

In 15 R. C. L., page 1010, it is stated as the general doctrine that:

"The courts look beyond the nominal parties, and treat all those whose interests are involved in the litigation and who conduct and control the action or defense as real parties, and hold them concluded by any judgment which may be rendered, as for example those who employ counsel in the case, assume the active management of the proceeding or defense, or who pay the costs and do such other things as are generally done by parties. In other words, by participating in the proceedings one is estopped by the judgment as to any questions actually litigated and decided therein. . . . Similarly, where a suit is prosecuted or defended by one person at the instance of another, and for the latter's benefit, the judgment will be binding and conclusive upon the latter. In all such cases the strict rule that a judgment operates as *res judicata* only in regard to parties and privies expands to include such persons as parties, or at least as privies."

These principles are applicable to appellant's situation, for no one can doubt that he was one of the real parties in interest to the first action. That was in reality, on its submission in the circuit court, a suit between appellant and Watson Adams. Appellant prosecuted his claim therein, the only claim adverse to Watson Adams', in the name of his father-in-law, and he is now seeking, in his own name, to obtain exactly the same benefits for himself that he sought in the former action to obtain in the name of his father-in-law; and he is asking a court of equity to allow him to adopt the procedure. Equity will not lend itself to such a course. He cannot escape the consequences of his conduct in the first suit, and that is true notwithstanding the opinion

of this court did not pass on the merits of the respective claims as originally asserted in that action. One may be precluded from asserting a claim that, except for his conduct, would be meritorious. In its practical effect that is often what an estoppel means. Whether appellant's claim, under different circumstances, would or would not be meritorious we do not decide. It suffices that he is estopped from asserting it, and is bound by the judgment of the circuit court in the first action.

The judgment is affirmed.