## McKenzie et ux. v. Hinkle et al.

(Decided Jan. 21, 1938.)

HOWES & WALKER for appellants.
C. F. PACE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

John J. Brown, a resident of Johnson county, Ky., owned, during his adult life, the small tract of land involved in this controversy, upon which his residence was located and in which he reared a family of six or seven children, by his first wife. She died prior to August 21, 1908, and the surviving husband married a second wife, Frances Brown. On the day indicated the husband prepared, signed, and acknowledged a deed, conveying to his second wife the tract of land for her life; but he inserted in the deed these conditions: (1) That if his wife,

the vendee in that deed, died before he did, then the land should revert to him; (2) that if his wife, the vendee, should survive him, then all interest conveyed to her should cease if she should marry again, when the property would "revert and become the property of the children, or their issues of first party, share and share alike"; (3) the acceptance of the deed by the vendee should be in lieu of all of her dowable interest in the estate of the vendor; (4) that if the parties to the deed should separate, then the wife's interest should cease and the estate vest in the grantor; and (5) "The first party hereby reserves the right to control the above land during his natural life, and this deed shall not become effective until after the death of the first party."

It was caused to be recorded by the vendor, but it is proven that he never parted with the possession of it thereafter or at any time after its execution, and the only delivery of it was what might be inferred from the vendor having it recorded. The parties continued to reside upon the land, the children of the vendor having married and settled elsewhere—perhaps some or all of them upon other land given to them by their father. Mr. and Mrs. Brown, (the second wife) became considerably enfeebled through the effects of age, and on January 17, 1924, they, together with the adult children of Brown and the spouses of those who were married—excepting appellees—joined in a deed conveying the land absolutely to appellants, E. M. McKenzie and wife, upon consideration that the vendees would move into the Brown residence and take care of and supply the necessities and wants and maintain in every respect the grantors for and during the remainder of their lives. The vendees therein immediately moved to the Brown residence and began the performance of the consideration for the conveyance to them; but the arrangement was soon disturbed by the filing of an action in the Johnson circuit court by J. J. Brown and wife and all of his adult children who had signed the deed to the McKenzies—not, however including appellees, two of the Brown children by his first wife who had not signed that deed. That petition alleged a failure on the part of the vendees (McKenzie and wife) to perform the conditions of the deed made to them on January 17, 1924. The McKenzies, as defendants in that action, controverted the al-

legations of the petition and averred that they had performed and expected to continue to perform the conditions of the deed executed to them. They furthermore charged that it conveyed to them the absolute title to the property and denied any interest owned therein by Brown and wife or any of their children, including those who were plaintiffs therein as well as appellees, who were not named as plaintiffs. They prayed for a dismissal of the petition and that their absolute title to the land be quieted and that defendants be enjoined from interfering with them in performing the conditions of their deed, or in disturbing them in any way in the enjoyment of their title.

Before the evidence in that case was completed, and of course, before the cause was submitted, J. J. Brown died, and there was some sort of revivor order made in the case, but the record in the instant case contains only a part of the pleadings, orders, and testimony therein, and we are unable to state the nature and character of the order of revivor. However, on the 10th day of March, 1928 (the cause having been theretofore submitted), the court rendered judgment dismissing the petition, and adjudging the costs against, not only the named plaintiffs in that petition, but also against the two appellees, who had not joined in that action and who had not signed the deed to appellants (the two McKenzies) of date January 17, 1924. However, they, about a year thereafter, made motion to modify that judgment as against them, which the court sustained. It was further adjudged, in addition to dismissing the petition, that the present appellants "are the owners in fee simple and entitled to the possession of the following described tract of land," etc., also "that defendants' (appellants here) title and possession in and to said tract of land be and the same are now quieted in the defendants and that plaintiffs be enjoined and restrained from interfering in any way with defendants' said possession." An appeal was prayed and granted to plaintiffs in that action from that judgment, but none was ever prosecuted. So that, it has continued to remain in full force and effect, with appellants in the undisturbed possession of the land. We shall hereafter refer to that action as "The Old Case."

In 1934 it became necessary for state road pur-

poses to condemn a strip of land across the tract herein involved (and the one so conveyed to appellants) for the purpose of constructing a state highway, and on February 14, of that year condemnation proceedings for that purpose were inaugurated in the Johnson county court. It resulted in assessing the damages for the strip taken and for consequential damage to other portions of the farm at the sum of $400, which was paid into court. In the meantime the widow of J. J. Brown, who is yet living, and all of his children—including those who signed and those who did not sign the deed, executed to McKenzie and wife—were brought into the case; but none of them asserted any rights in and to the land or to the fund created by the condemnation judgment, except the two appellees, Mrs. Hinkle and Mrs. Murray, neither of whom had signed the McKenzie deed, and their husbands. They filed a pleading asserting and claiming the right to proportionate parts of the condemnation fund as well as proportionate titles to the entire tract of land conveyed to the McKenzies. At that stage of the pleadings the controversy was transferred to the Johnson circuit court, since by such claims the title to land had become involved. In that court appellants denied the asserted title and interest of Mrs. Hinkle and Mrs. Murray to any portion of the condemnation fund or to any interest in the tract of land, a portion of which had been condemned, and in addition to such denial appellants asserted entire title to the condemnation fund and to the tract of land, under their deed from J. J. Brown and wife, hereinbefore referred to. Also in a separate paragraph they pleaded the judgment in the old case in bar of any rights that appellees may have theretofore had. Following pleadings made the issues and upon submission the court adjudged that appellees each owned a one-sixth undivided interest in the involved tract of land and a like interest in the condemnation fund, and that such interest was derivable from the deed executed by J. J. Brown to his wife in 1908. This appeal is prosecuted by the McKenzies from that judgment.

Many questions are argued by learned counsel for appellants as reasons for reversing the judgment, among which are: (a) That the deed executed by J. J. Brown to his wife in 1908 was never delivered; (b) that

it was exclusively testamentary, and not having been executed as a will it was of no effect; and (c) that the judgment in the old case constitutes a bar to the right of appellees to assert or obtain the interests that the court adjudged to them. It will not be necessary to determine whether or not the first two reasons (a) and (b) are meritorious, although there are more or less plausible grounds supporting them, since we have concluded that reason (c) is sufficient to bar the claim of the appellees to any interest in the involved property and, therefore, to authorize a reversal of the judgment.

The doctrine of res judicata is firmly established in the law. Its purpose when first promulgated in the Dutchess of Kingston case, 20 Howard St. Tr. 355, was to provide a rule whereby there should be an end to litigation, and that questions once decided between the same parties, or their privies, should forever thereafter remain decided, and that all matters that could have been litigated in the action wherein the estopping judgment was rendered must be brought forward therein. But, in order for the judgment to have that effect the issues and the parties should be the same, but within that requirement it was early held—and the rule firmly established—that the word "parties" within that requirement was not necessarily confined to actual parties in the litigation in which the judgment was rendered, but that the term also embraced others, strangers to the litigation, who were not formal plaintiffs or defendants, but who by their conduct bring themselves in such relationship to the litigation as to become bound by the judgment. Such active participation in the litigation producing that result is clearly set forth and pointed out in the text in 34 C. J. p. 1006, secs. 1426 and 1427. That rule, as so incorporated in the text referred to, is universally recognized and applied—to such an extent that it is not deemed necessary to refer to other texts containing it. Among the Kentucky cases cited in note 83 to the text in section 1427 are Amburgey v. Adams, 196 Ky. 646, 245 S. W. 514, 516; Heavrin v. Lack Malleable Iron Co., 153 Ky. 329, 155 S. W. 729; Clark County v. Ecton, 150 Ky. 774, 150 S. W. 1016; Schmidt v. Louisville, etc., R. Co., 99 Ky. 143, 35 S. W. 135, 36 S. W. 168, 18 Ky. Law Rep. 65; Kaye v. Louisville, 14 S. W. 679, 13 Ky. Law Rep. 114.

In the cited Amburgey Case in dealing with the identical question of who are "parties" to litigation in order to be bound by the judgment rendered therein we employed this language: "The courts look beyond the nominal parties, and treat all those whose interests are involved in the litigation and who conduct and control the action or defense as real parties, and hold them concluded by any judgment which may be rendered." It is an approved excerpt from 15 R. C. L. page 1010. The other cited domestic cases in support of the text in Corpus Juris are to the same effect. The rule announced in them was unqualifiedly followed in the later domestic cases of Metropolitan Casualty Ins. Co. v. Albritton, 214 Ky. 16, 282 S. W. 187; Berry v. Irwin, 224 Ky. 565, 6 S. W. (2d) 705, and Ralph Wolff & Sons v. New Zealand Ins. Co. etc., 248 Ky. 304, 58 S. W. (2d) 623. In reading the text, the cited opinions, and others dealing with the question, it will be found that there are certain qualifications to the rule whereby strangers, intermeddlers, and participants in the litigation are bound by the judgment as though they were formal parties, but no such relieving qualifications are found in this case, and if appellees are shown to have so conducted themselves at the inauguration of and during the pendency of the old case as to bring themselves within the rule under consideration, then the judgment in the old case adversely determined the rights herein sought to be asserted by them and they cannot now relitigate them in this proceeding.

That they did so conduct themselves was clearly shown by the testimony heard in the instant action before the circuit court rendering the judgment appealed from after the cause had been transferred from the Johnson county court to the circuit court. Mr. Murray, as well as his wife, and also Mrs. Hinkle and her husband, were extremely active in promoting the filing of that case—Murray going with the old people to consult attorneys with reference thereto and actively participating in the preparation of the petition therein. Perhaps the wives, who were the children of J. J. Brown, were not present at the time the petition was prepared; but the testimony found in the record conclusively demonstrates that they were willing that such participation be made and, no doubt, it was done after thorough con-

sultation with them. Not only so, but they testified in that case and some of them, if not all of them, were present when the depositions were being taken and coached the attorneys for the plaintiffs and finally they did most everything that a formal and most enthusiastic litigant would engage in. We deem it of no material value to insert the testimony with reference to such matters, since it is most convincing that the litigation of the old case would perhaps have never been inaugurated had appellees not solicited, urged, and encouraged it in the various ways pictured in the record. Especially is that true with reference to the husbands of the two Brown daughters who did not sign the deed to the McKenzies. The circumstance of their not having signed that deed, and of their not having been made formal parties to the old case, no doubt furnished what appellees thought was a clear avenue for an entrance into the small "jackpot" in contest—not reckoning, however, that their prior actions in that case, followed by the judgment rendered therein, had shattered their right to any of the contents of that vessel. The whole trouble resulting in all the litigation appears to have been the outgrowth of interfering "in-laws" whose activities in the old case left them and their wives in the fix of Br'er Rabbit when he struck the tar baby, but there is no briar patch in the law whereby they might escape from their dilemma.

If it should be argued that the estopping judgment relied on, whereby appellants were adjudged the absolute owners of the involved land, exceeded that to which defendants therein (appellants here) were entitled, the answer is that the pleadings in that case sought the relief granted by the judgment, and if the court granted rights broader than the attacked deed in the action created, because of the conditions contained therein, then the answer is that such excess adjudications are not void, but only erroneous, and, as we have seen, no appeal was ever prosecuted therefrom. Moreover, for ought that appears in this case, the court in that case in reaching its conclusion may have determined that the deed to the wife, wherein the claims of appellee were created (if at all), was never delivered, or that it was testamentary in character and, not having been executed as a will, it was of no effect. The entire

record of the old suit has not been brought here and we will not on that account determine any part of the judgment rendered in the old case—so relied on in the instant action—as invalid, but will presume that all of it was rendered in the exercise of complete jurisdiction to do so.

Having so concluded it follows that the judgment appealed from was and is erroneous, and it is reversed, with directions to dismiss all pleadings of appellees wherein they assert any interest in the land, or in the condemnation fund involved.