**GREYHOUND CORP. v. LEADMAN et al.**
**No. 141.**

United States District Court
E. D. Kentucky. Jackson.
May 26, 1953.

Stoll, Keenon & Park and John L. Davis, Lexington, Ky., for plaintiff.

Napier & Napier and C. W. Napier, Hazard, Ky., for defendants.

FORD, Chief Judge.

The plaintiff, a corporate citizen of the State of Delaware, invokes jurisdiction of this court, 28 U.S.C. § 1332(a) seeking to permanently enjoin the defendants, all of whom are citizens of Kentucky, from enforcing a judgment for $15,000 rendered against plaintiff in the Circuit Court of Breathitt County, Kentucky, on August 23, 1952, in favor of the defendant, Evelyn Leadman, in an action involving personal injuries sustained by the defendant while a passenger on plaintiff's motor bus on November 15, 1951, which bus was then being operated as a carrier of passengers between Lexington and Hazard, Kentucky.

As an exhibit with its petition, the plaintiff files a copy of the entire record of the case in which the judgment was rendered by the State Court and rests its claim to equitable relief upon allegations that "the said judgment is null and void because the original action was not filed against this plaintiff; that there was no order making this plaintiff a party to said action; that no summons was served on this plaintiff on its process agent nor was the original summons served on Southeastern Greyhound Lines served on the process agent or officer of this plaintiff."

Confronted with the limitations upon Federal judicial power by the provisions of § 2283 of Title 28 U.S.C., Judicial Code of 1948, providing that "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments", plaintiff claims that the facts alleged and established by proof are sufficient to bring this case within the second exception to the statute which renders the statutory prohibition inapplicable to deny such power to a court of the United States "where necessary in aid of its jurisdiction".

In Toucey v. New York Life Insurance Co., 314 U.S. 118, 62 S.Ct. 139, 145, 86 L.Ed. 100, the court sets out the statutory provisions from which the present statute was derived, beginning with the Act of March 2, 1793. All of them express "the desire of Congress to avoid friction between the federal government and the states resulting from the intrusion of federal authority into the orderly functioning of a state's judicial process", by precluding Federal Courts from the use of injunction to stay litigation in State Courts, and the Court observed that "In the course of one hundred and fifty years, Congress has made few withdrawals from this sweeping prohibition * * *."

However, prior to the decision of the court in the Toucey case, supra, it had come to be settled by repeated decisions that the Federal Courts, as courts of equity, had the power to enjoin a holder of a State Court judgment from reaping its benefits "in circumstances where its enforcement will be contrary to recognized principles of equity and the standards of good conscience * * *." Wells Fargo & Co. v. Taylor, 254 U.S. 175, 183, 41 S.Ct. 93, 96, 65 L.Ed. 205, and cases cited therein. The Toucey decision appeared to cast considerable doubt upon this and other recognized exceptions to the statutory inhibition, which were not expressly set out in the statute. The obvious purpose and intent of the Congressional revision of 1948 embodied in § 2283 was to remove such doubts and, as said in the reviser's notes, to restore the basic law as generally understood and interpreted prior to the Toucey decision. See, "The meaning of present § 2283" in Moore's Commentary on the U.S. Judicial Code, pp. 407–414.

In applying the prohibition set out in § 2283, we therefore follow the rule which controlled the application of the prior statute, 28 U.S.C. § 379, which was that "the prohibition applies whatever the nature of the proceeding, *unless the case presents facts which bring it within one of the * * * exceptions * * *.*" Hill v. Martin, 296 U.S. 393, 403, 56 S.Ct. 278, 283, 80 L.Ed. 293, (Italics added).

Accordingly, the question in this case is whether the facts and circumstances presented show that the injunction sought by plaintiff is necessary in aid of the established equity jurisdiction of the court to prevent enforcement of a judgment which "will be contrary to recognized principles of equity and the standards of good conscience". Wells Fargo & Co. v. Taylor, supra. Since the basis of plaintiff's claim is an exception to the statute, the burden rests upon it to establish the facts necessary to bring itself within the exception relied upon. Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 44, 45, 68 S.Ct. 822, 92 L.Ed. 1196; Javierre v. Central Altagracia, 217 U.S. 502, 30 S.Ct. 598, 54 L.Ed. 859; 20 Am. Jur. p. 148, § 142. The mere fact that one against whom judgment was rendered was not originally named as a party to the action or that no formal summons or notice was issued or served is not always sufficient to sustain a claim for equitable relief from enforcement of a judgment for, as said in Ocean Accident & Guarantee Corp. v. Felgemaker, 6 Cir., 143 F. 2d 950, 952:

"It has often been held that a person not technically a party to a judgment may be so directly connected with it by his interest in the result of the litigation and by his active participation in the suit as to be bound by the judgment. * * *

"As a development of the same doctrine, it is also frequently held that a judgment may be rendered directly against one who although not a formal party in the case, has assumed or participated in the defense."

Among the numerous authorities cited in support of the above statement of the general rule, Judge Allen includes the Kentucky case of Schmidt v. Louisville C. & L. Ry. Co., 99 Ky. 143, 35 S.W. 135, 36 S.W. 168, which was affirmed in Louisville & N. R. Co., 177 U.S. 230, 20 S.Ct. 620, 44 L.Ed. 747. To this may be added more recent Kentucky cases which are in full accord, viz.: Heavrin v. Lack Malleable Iron Co., 153 Ky. 329, 155 S.W. 729; Amburgey v. Adams, 196 Ky. 646, 245 S. W. 514; McKenzie v. Hinkle, 271 Ky. 587, 112 S.W.2d 1019, and Kentucky Bell Corp. v. Tye, 298 Ky. 674, 183 S.W.2d 939.

■ The plaintiff cites and relies upon Louisville & N. R. Co. v. Hall, 12 Bush 131, 75 Ky. 131; Wilhite v. Convent of Good Shepherd, 117 Ky. 251, 78 S.W. 138; University of Louisville v. Hammock, 127 Ky. 564, 106 S.W. 219, 14 L.R.A.,N.S., 784; Lingar v. Harlan Fuel Co., 298 Ky. 216, 182 S.W.2d 657, and Carnation Co. v. Devore, Ky., 252 S.W.2d 860. These cases seem to deal entirely with collateral questions. They do not purport to establish a doctrine contrary to that set out by the above mentioned cases. But, however that may be, the ultimate question in this case turns upon the interpretation and the proper application of an Act of Congress, 28 U.S.C. § 2283, a subject upon which Federal law is controlling.

Findings of Fact.

1. On April 5, 1952, the defendant Evelyn Leadman brought an action in the Circuit Court of Breathitt County, Kentucky, entitled "Evelyn Leadman, Plaintiff v. Southeastern Greyhound Lines, Inc., and Marion Clay Hamm, Defendants" alleging, in substance, that on the 14th day of November 1951, while the plaintiff was a passenger upon one of defendant's busses, operated by the defendant Southeastern Greyhound Lines, Inc., by its driver and employee, the defendant Marion Clay Hamm, the bus upon which she was riding was so carelessly and negligently operated by the driver as to cause it to collide with the end of a steel highway bridge, thereby resulting in serious and permanent personal injuries to the plaintiff, for which she sought judgment in the sum of $150,000.

A summons was duly issued by the Clerk of the Court directed to the Southeastern Greyhound Lines, Inc., upon which the Sheriff's return is in the following words: "Executed April 8, 1952, on the Southeastern Greyhound Lines, Inc., a division of the Greyhound Lines, Incorporated, by delivered to Guy Huguelet, president of the Southeastern Greyhound Lines, Inc., a true copy of the within summons, and as to Marion Clay Hamm, not served, J. Waller Rodes, Jr., Sheriff Fayette County, By J. V. Hall, D. S." On the same date, a copy of the summons was duly executed upon the defendant Marion Clay Hamm by the Sheriff of Nicholas County.

2. For a number of years, the defendant Southeastern Greyhound Lines, Inc., had held a certificate of convenience and necessity pursuant to which it operated passenger busses between Lexington and Hazard, Kentucky. In the late fall of 1950, it transferred all its assets to plaintiff, The Greyhound Corporation, which assumed all of Southeastern's liabilities and continued the operation of the busses in substantially the same manner as they had been operated by Southeastern. Most of the employees of Southeastern were retained, though in some instances they were retained in somewhat different capacities. At the time of the transfer, the chief office of Southeastern was at Lexington; Mr. Guy Huguelet was its president and Mr. R. W. Keenon its general counsel. After the transfer to the plaintiff, operations were carried on very much as previously under the name "Southeastern Greyhound Lines, Division of Greyhound Lines". Mr. Huguelet was continued as the chief officer or agent in charge of these operations and Mr. Keenon, though no longer designated as general counsel, continued, when called upon, to act as attorney for the plaintiff. As of April 20,

241 of the Breathitt

1951, the corporate existence of Southeastern Greyhound Lines, a Kentucky corporation, was duly dissolved in accordance with the laws of Kentucky.

3. Messrs. R. W. Keenon and O. J. Cockrell, appearing upon the face of the record as attorneys for Southeastern Greyhound Lines, Inc., filed an Answer in the State action on August 11, 1952, the first day of the August term of the Breathitt Circuit Court, stating: "This defendant for further answer states that it was formerly a corporation organized under the laws of the State of Kentucky; that said corporation was dissolved in April 1951; that since that time its former officers are winding up the affairs of the corporation. It states that, prior to November 14, 1951, it transferred all its assets, including its buses and certificates of convenience and necessity, to The Greyhound Corporation."

On the same date, Evelyn Leadman, the plaintiff in the State action, filed an amended petition asking the court to make "The Greyhound Corporation" a party defendant in that action, and asserting, in substance, that the relationship of Southeastern Greyhound Lines, Inc., and The Greyhound Corporation was of such a nature that the service of the summons upon Mr. Huguelet rendered another summons unnecessary and none was issued or served.

4. When the summons was served upon Mr. Huguelet, as shown by the Sheriff's return, obviously following the usual routine which had previously prevailed when Southeastern Greyhound Lines, Inc., was in existence, he sent the summons to Mr. Keenon without comment. At that time Mr. James P. Cassidy was in charge of the handling of claims against the plaintiff which arose upon its division known as "Southeastern Greyhound Lines". What communication Mr. Huguelet had with Mr. Cassidy, if any, is not disclosed. Neither Mr. Huguelet nor Mr. Cassidy testified. Their silence is not without significance, for Mr. Cassidy immediately became active in the preparation of the defense to the suit, apparently in the same manner and to the same extent he would have done in defense of any other case against plaintiff. His activity is evidenced by his collaboration with Mr. Keenon in the procurement of the testimony of important witnesses for the defense. He arranged for the taking of depositions, attended the taking of depositions and was quite active in efforts to induce Mrs. Leadman and her attorneys to agree to a compromise settlement of the case before trial. It seems a justifiable if not irresistible inference that, on behalf of plaintiff, Mr. Cassidy assumed all expense in connection with the defense of the case, including attorneys' fees, since Southeastern, with its assets and liabilities transferred to and assumed by plaintiff and its corporate existence terminated, was nothing more than a name; and the other defendant, Marion Clay Hamm, the driver of the bus involved in the case, was so indifferent to the litigation it was necessary to procure a special order of court for his personal attendance at the trial (see pages 22, 23 of Clerk's record). The evidence is convincing that plaintiff, The Greyhound Corporation, in its own interest and for its own protection, acting through its agent, Mr. Cassidy, and its attorney, Mr. Keenon, not only assumed the burdens incident to the preparation of the defense of the case in the State Court, but effectively dominated and controlled the presentation of it.

### Conclusions of Law.

■ The facts and circumstances disclosed by the evidence impel the following conclusions:

1. The judgment of the State Court sought to be enjoined herein was not procured by denial or impairment of any of plaintiff's constitutional rights, nor is it otherwise rendered null or void.

2. Enforcement of the judgment in question would not be unconscionable nor contrary to recognize principles of equity.

3. The evidence is insufficient to bring plaintiff's claim within any of the exceptions to the prohibitory provisions of 28 U.S.C. § 2283 and, hence, the power of the Court to grant the injunctive relief sought by plaintiff is precluded. Judgment should be entered accordingly.