# Martin v. Commonwealth.

February 18, 1947.

Rehearing denied May 16, 1947.

Edwin P. Hill, Judge.

Joe Hobson and Dan T. Martin for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

On a former appeal from a judgment imposing imprisonment of appellant for eleven years, we reversed because the court had failed to include in the self-defense instruction the right of appellant to defend himself, not only from deceased but those whom he claimed were

acting in concert with him. Martin v. Commonwealth, 299 Ky. 1, 184 S. W. 2d 234. On this trial the court embodied such an instruction now criticized as to substance.

The instant trial was had before a jury from another county, which returned a verdict of guilty, imposing a sentence of two years' imprisonment. On appeal it is contended that the court erred: (1) In overruling motion for a directed verdict; (2) in giving erroneous instruction and failing to give an instruction on involuntary manslaughter; (3) in failing to discharge the jury after the court had ruled certain evidence incompetent, and improperly admonishing the jury.

Grounds (1) and (2) were relied upon and disposed of on the former appeal. As we view the evidence on the instant trial, we fail to find any material difference in relation to the sole issue which the jury was to consider, that is, under the admission by appellant that he fired the fatal shot, whether it was fired in good faith in his self-defense. The chief argument on this ground is that two witnesses for the commonwealth who had testified on former trials, had upon this trial made statements which were contradictory of their testimony on three former trials. These contrary statements were brought out by facing witnesses with stenographic reports on former trials, and comparing them with instant statements.

On a former trial Edith Martin had said that when she and her brother passed appellant's home prior to the homicide, she saw him "at the barn." On the instant trial she said she saw him "coming from the barn." On a former trial she had said that on the return trip appellant was "standing on the porch." Another witness had on former trial testified that he saw appellant (at about the time of the homicide) "as he came out on the porch," and on another, "as he was coming out of the house," and on the instant trial, "he was coming through the gate." These are fair examples of the several claimed material contradictory statements.

The argument on this point reduces itself to the contention that due to the fact that there were many contradictions, these two admittedly important witnesses were wholly unworthy of belief, and their entire testimony should be disregarded. It is also urged that maps

or drawings, and certain photographs introduced by appellant, .all made under his direction, manifested that these witnesses could not have been telling the whole truth. We find no attempt to impeach them otherwise, and it may be observed that if the maxim "falsus in uno," etc., be applied here, it could, as we view appellant's testimony, be applied to him with equal force.

The drawings and photographs were made under such circumstances that they might be seriously questioned. However this may be, the record shows that the jury at the instance of appellant went to and viewed the scene of the homicide, and thus were better enabled to consider and weigh the testimony as to physical facts, and it is well established in law that the jury is the judge of the credibility of witnesses.

The contention of appellant that was entitled to an instruction on invountary manslaughter, is based on the fact that he testified that he shot over his shoulder, "to scare them so they would not beat me up." Reviewing his whole testimony, including the above assertion, it is clear, as he admitted he had said on the former trial, that he shot in self-defense, a claim which is vigorously presented in argument on the alleged faulty self-defense instruction. We are clearly of the opinion that what we said in our former opinion on these points is applicable here without repetition.

Levi Rice, witness for the commonwealth, said he saw appellant prior to the day of the homicide and following the day when appellant says Billie Martin had struck him with rocks. This witness, who it was claimed had been present at former trials, had not theretofore testified. In his testimony he said that appellant had, in referring to deceased, made a threatening remark. He was asked why he had not told this before, and he answered, "I never told anybody about it until after Wesley was convicted here." There was objection, and the court admonished the jury not to consider this statement for any purpose.

The statement was made spontaneously on cross-examination, and apparently not with any intent to have influence on the jury. The court's admonition told the jury that his guilt or innocence had never been determined. Aside from this it is hardly to be conceived

that a jury of ordinary intelligence would have been moved to declare guilt merely on the ground that appellant had theretofore been convicted. This was the fourth trial of the case, and no doubt others had been publicized. There can be no doubt but that the jury, due to the numerous references thereto, knew there had been two, if not three, former trials, and might have as well concluded that there had been a conviction and reversal, as well as mistrials. We cannot conclude that the jury was prejudiced or biased; nor do we find that the form or substance of the court's admonitions was prejudicial. What is said here in relation to the court's admonition, and refusal to discharge the jury, applies to the rulings and admonition with respect to the following alleged incompetent testimony, which was withdrawn from the jury with proper admonition.

On the former trial there was introduced in evidence a rock which appellant claimed deceased threw and struck him on the head. This was picked up later by appellant's wife and introduced by her. There are several pages of testimony on cross-examination taken up in an attempt to have appellant identify the rock as being the same one theretofore introduced; the rock was produced and examined, but there was not sufficient identification to permit it to be introduced, or if it were, the court ruled it out and admonished the jury not to consider it or any of the testimony regarding it for any purpose.

The rock displayed was apparently produced by the circuit clerk, to whom the official stenographer had turned it over following the first trial, and there seems to be no contention that it was not the same rock, but appellant persistently refused to identify it mainly because he had neither picked it up, nor introduced it. We cannot see how colloquy concerning the rock, perhaps carried to too great an extent, could have swayed the jury one way or another, since appellant testified at length as to being struck more than once by rocks thrown by deceased.

The court gave an instruction, as suggested in our former opinion, but it is contended that it was erroneous and prejudicial to defendant. It advised the jury that appellant had the right to defend himself from deceased

or those acting in concert with him. The objection is to the use of the word "reasonable" in this part of the instruction: "And it further appeared to him that the only reasonable means of protecting himself against danger real or apparent," &c.

It is contended that we have in several cases held that the use of the word "reasonable" in this portion of the instruction is error, and in some cases have reversed because of the error. This instruction seems to have been taken bodily from Watkins v. Commonwealth, 123 Ky. 817, 97 S. W. 740, as suggested in our former opinion, particularly as to the right to defend from all from whom danger was apprehended. However, in doing so the court omitted the word "safe" and used "reasonable" instead of "reasonably." Counsel cites Tompkins v. Commonwealth, 117 Ky. 138, 77 S. W. 712, 713, and Hopkins v. Commonwealth, 234 Ky. 676, 28 S. W. 2d 971, 973, in which we condemned the use of the words "reasonable means," or "reasonably safe means." The first case was written before the opinion in the Watkins case, in which we directed the use of the words "reasonably safe means."

In the Tompkins case (a death penalty sentence) we reversed on grounds of refusal to admit competent evidence, and the use of the words "reasonably safe" means in the self-defense instruction. The Hopkins judgment (21 years imprisonment) was reversed because the instruction on self-defense incorporated the words "reasonable means," but as we read the opinion the gravest error was in the same instruction which used the phrase "the only apparent reasonable means of escaping or warding off said danger * * * was to so shoot," etc. We held there that the word "safe" should have been used without the qualifying words. It may be noted that in the Hopkins case we said in reference to the error in the instruction: "While under some states of fact the instruction as given might not be prejudicial, it is not a correct statement of the law." We concluded that the instruction was prejudicial in view of the verdict and the facts.

Here penalty was for imprisonment for two years, thus the verdict would not indicate that the jury was in any wise biased or prejudiced. It could hardly be con-

ceived that the jury was moved to find guilt because of the failure to use the word "safe," either alone or in connection with the word "reasonable." The evidence was conflicting; there was contradictory evidence on the part of witnesses for both parties. The only question the jury had to determine was whether or not appellant, admitting he fired the fatal shot, fairly convinced the jury that he did so in his defense. We conclude that the proof was sufficient to take the case to the jury and to uphold the verdict which as noted, inflicted the minimum penalty.

Judgment affirmed.