**Earl BARNETT, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 24, 1961.

Rehearing Denied Sept. 22, 1961.

Nickell & Walter, West Liberty, E. B. Rose, Rose & Short, Beattyville, for appellant.

Jo M. Ferguson, Atty. Gen., H. D. Reed, Jr., Asst. Atty. Gen., for appellee.

MONTGOMERY, Judge.

Earl Barnett was convicted of the offense of voluntary manslaughter in the homicide of Fallon McIntosh. He was sentenced to serve five years in the state penitentiary. On appeal, he urges that: (1) His plea of res judicata should have been sustained; (2) the court erred in failing to admonish the jury properly and to set aside the swearing of the jury because of inadmissible and prejudicial testimony; and (3) the evidence is insufficient to sustain the conviction.

Fallon McIntosh and Bert Fields were found slain in the Fields home. Pearlie Fields, Bert's wife, was indicted for both homicides. She was acquitted of killing her husband but was found guilty of voluntary manslaughter of Fallon McIntosh and was sentenced to serve fifteen years' confinement. At both trials Pearlie testified that appellant killed both men. On the basis of Pearlie's testimony, two indictments were returned by the August 1957 Breathitt County grand jury against Earl Barnett in which he was charged with killing McIntosh and Fields, respectively. These prosecutions were moved to Morgan County for trial on a change of venue. The first trial of appellant for killing McIntosh resulted in a hung jury. The second trial resulted in his conviction.

The plea of res judicata is based on appellant's insistence that the prior conviction of Pearlie Fields for the killing of McIntosh bars the later conviction of appellant for the same killing.

Res judicata is a rule of universal law pervading every well-regulated system of jurisprudence. It has two bases, embodied in the common law; the one, public policy and necessity, which makes it to the interest of the state that there should be an end to litigation; the other, the hardship on the individual that he should be vexed twice for the same cause. Rex v. Duchess of Kingston, 20 Howard State Trials 538; 50 C.J.S. Judgments § 592, page 11. The doctrine of res judicata is applicable to judgments in criminal prosecutions and is subject to the same limitations as apply in civil cases. Commonwealth v. Spivey, 243 Ky. 483, 48 S.W.2d 1076; Ex parte Mote, Ky., 275 S.W.2d 48; 1 Wharton's Criminal Law and Procedure, Section 174, page 406; Annotation, 147 A.L.R. 992. Briefly, the doctrine is that a fact or matter distinctly put in issue and directly determined by a court of competent jurisdiction cannot afterwards be disputed between the same parties.

A former judgment may be pleaded as res judicata only by the parties to the action and their privies and not by strangers. There must be a substantial identity of the parties to the action in which the judgment was rendered in the same capacities and in the same antagonistic relation, or else they must be in privity with the parties in such action. For the purpose of the doctrine, a party is one who

has a direct interest in the subject matter of the action and has a right to control the proceedings, make defense, examine witnesses, and appeal if an appeal lies. Hazard Lumber & Supply Co. v. Horn, 228 Ky. 554, 15 S.W.2d 492; Fordson Coal Co. v. Wells, 245 Ky. 291, 53 S.W.2d 564; McKenzie v. Hinkle, 271 Ky. 587, 112 S.W.2d 1019; Campbell v. McCoy, Ky., 306 S.W.2d 843; 50 C.J.S. Judgments §§ 756, 763, and 768, pages 275, 289, and 297, respectively.

In discussing the operation of the rule, Sims, C. J., quoting the opinion of the trial judge, Honorable W. H. Spragens, wrote:

"The rule should work both ways and so far as I have found the courts agree that the 'estoppel must be mutual. A party should not be permitted to claim the right to assert in his favor estoppel by a judgment in a suit, if an unfavorable judgment in the same suit could not have been asserted as an estoppel against him.'" Montgomery v. Taylor-Green Gas Co., 306 Ky. 256, 206 S.W.2d 919, 921.

Res judicata should not be confused with former acquittal or conviction.

■ The application of the doctrine of res judicata here is limited to a determination of whether the Commonwealth is estopped to prosecute Earl Barnett for the unlawful killing of Fallon McIntosh after Pearlie Fields had been convicted of the same homicide. This case is unique in that the defendant here sought in a later trial the protection of res judicata by pleading the conviction of another party in an earlier trial.

Neither the interest of the state in bringing litigation to an end nor the hardship to the individual by being twice vexed in the same action affords any basis for relief to appellant. Earl Barnett was not a party to the prosecution in which Pearlie Fields was convicted. There was no privity or identity of interests or capacities and there was a distinct difference in antagonistic relations. It was Pearlie's testimony in her

defense that prompted the indictment against appellant. There is no mutuality of estoppel since an acquittal of Pearlie could not have been introduced in the prosecution against appellant. Steely v. Commonwealth, 132 Ky. 213, 116 S.W. 714; Arnett v. Commonwealth, 261 Ky. 607, 88 S.W.2d 276; State v. Wilson, 236 Iowa 429, 19 N.W.2d 232; 50 C.J.S. Judgments § 754, page 268. In Santa Fe Grain Co. v. Minneapolis-Moline Power I. Co., Tex.Civ. App., 86 S.W.2d 835, it was held that a defendant cannot plead in bar of an action against him the fact that the plaintiff has already recovered a judgment on the same cause of action against a stranger not in privity with defendant or jointly bound with him.

Blue Valley Creamery Co. v. Cronimus, 270 Ky. 496, 110 S.W.2d 286, and Overstreet v. Thomas, Ky., 239 S.W.2d 939, relied on by appellant, are not applicable since there was privity under the doctrine of respondeat superior. The foreign cases cited by appellant are distinguishable on the basis of privity.

The rule contended for by appellant would make a mockery of justice, for under it one guilty of murder could boast openly of its commission without fear of prosecution if another, no matter how innocent, had been convicted previously. To look at the other side of the situation, should it be considered that Pearlie is not guilty of the homicide then her avenue of escape is by executive clemency. The plea of res judicata was properly denied by the trial court.

Appellant urges strongly that the evidence is insufficient to sustain the conviction. He insists that the testimony of Pearlie is without probative value because of inconsistencies, changes, and contradictions in her statements and testimony, and that there is not enough other testimony to sustain the verdict. The verdict is based on the testimony of Pearlie as corroborated by the testimony of Carrie McIntosh, Edna

Howard, Reece and Anna Holbrook, and Norman Allen.

Pearlie testified that she and Bert lived on Smith Branch above Quicksand about six miles from Jackson in Breathitt County. Bert was employed on the night shift at a mine forty miles from home.

Pearlie said that she had known appellant about eight or nine months prior to the killing and that he first came to her home at the invitation of her husband, with whom he had been drinking. In describing the relations between her husband and appellant, Pearlie said: "My husband had been hauling whisky for Earl," to which an objection was sustained. The jury was admonished not to consider the statement for any purpose and that drinking and whisky had nothing to do with the case on trial. Pearlie, in answer to a question, said that appellant had been coming to her home for about eight or nine months before the killing. Appellant then moved to set aside the swearing of the jury, which motion was overruled. Prior to the testimony objected to, Pearlie had testified, without objection, that appellant had been coming to her house "almost every night part of the time" before the killing and that they had been having "intimate relations."

Appellant urges that the court committed reversible error with respect to the testimony as to intimate relations and whisky business. There was no error as to the "intimate relations" testimony because of the failure to object to its introduction. Hodge v. Commonwealth, Ky., 287 S.W.2d 426; Karl v. Commonwealth, Ky., 288 S. W.2d 628. It was not the duty of the court to admonish the jury as to the purpose of the evidence in the absence of such a request by appellant. Renaker v. Commonwealth, 172 Ky. 714, 189 S.W. 928; Acree v. Commonwealth, 243 Ky. 216, 47 S.W.2d 1051. In view of the prompt ruling and admonition, the voluntary statement concerning the whisky business is not considered as prejudicial. Hocker v. Commonwealth, Ky., 262 S.W.2d 824; Rich v. Commonwealth, Ky., 305 S.W.2d 771.

Pearlie testified that appellant had seen her and McIntosh together "at the mouth of Quicksand" at about 6:30 p. m. of the day prior to that of the killing. She said that appellant said, "I have caught you dirty sons of bitches"; that Fallon said he did not want Earl to cause any trouble "between him (Fallon) and his wife, or with Bert"; and that appellant threatened McIntosh. She also said that appellant drove up later the same evening as she was waiting to pick up her husband when he returned from work. He accused Pearlie of "hanging around that damned Fallon McIntosh" and "going with him," and threatened to kill her and to commit suicide.

On the day of the killing, Bert had been discussing a car trade with Fallon. Pearlie said that she took Bert to Fallon's home in the afternoon and that the two of them later came to her home with a case of beer. Carrie McIntosh, Fallon's widow, corroborated Pearlie's testimony as to the presence of Bert and Fallon together at the McIntosh home.

Bert and Fallon were enjoying the beer while Pearlie was preparing supper. She testified that when Bert left the house temporarily she went into talk to Fallon. When Bert returned, appellant was behind him. Pearlie said that appellant appeared to be "mad" and that as she left the room the men were talking. She stated, "All at once Fallon said 'I would not let that dirty son of a bitch in my house,'" and then three shots were fired. She returned to the room immediately. Bert and Fallon were on the floor. Appellant had thrown Bert's pistol on the bed and had taken his pistol out and said, "If you say anything about this, I am going to give you the same thing." She testified that he said, "You tell them that you killed these two men." She then drove appellant to the schoolhouse in Bert's station wagon where he got into his car to drive back to Jackson after telling her to follow him.

Edna Howard, who lived thirty-two steps from the Fields home, corroborated Pearlie's statements about the two cars going up the branch, the three shots, and about Bert's car going down the branch just after the shots were fired. She also said that she heard noises like people "rastling" on the floor just before the shooting, which was contrary to Pearlie's testimony on the trial, but consistent with a former statement that she tried to stop a fight between Bert and Fallon.

Reece and Anna Holbrook testified that they knew appellant and that they met him in his car on the road leading to the Fields home near the time of the shooting. Norman Allen testified that he had occasion to look for appellant in Jackson shortly after 6 p. m., but was unable to find him although he looked on the main streets and in the vicinity of the jail and bus station.

The record does not show that appellant made a motion for a directed verdict at the conclusion of the testimony for the Commonwealth as is recited in the motion for a new trial. It is sufficient to say that if made, such motion should have been overruled at that time. The motion was renewed at the conclusion of all of the testimony and was overruled.

Appellant's defense consisted of an alibi sustained chiefly by the testimony of Lewis Watkins, chief of police, who claimed to have been with appellant most of the evening patrolling the city of Jackson. Their testimony is corroborated by the testimony of Charlie Deaton, Johnny Deaton, and his wife, who testified that appellant visited their places of business at times inconsistent with his being at the murder scene. Barnett admitted having known Pearlie for seven or eight months and having had intimate relations with her for five or six months, ending, without explanation, when he became a policeman on October 6. Barnett said he knew about Bert Fields' pistol.

Coupled with the alibi, appellant's defense is based on the theory that Pearlie killed the two men as she said she had done when she came to the Jackson police station on the night of the killing. It is appellant's contention that she was telling the truth then, and later changed her story to say that appellant had done the killing and forced her to say that she had done it. Without detailing the various inconsistencies, contradictions, and variances in Pearlie's testimony, it must be said that in the main it remained the same. In this respect, there was other testimony in corroboration, as well as testimony tending to show that she was hysterical, required sedation, and was unable to make a coherent statement on the night of the killing and for some time afterwards. Appellant's testimony shows that during that time Pearlie repeated many times that she did the killing.

Pearlie's testimony is corroborated in part by appellant's testimony as to their intimate relations and his knowledge of the pistol. Appellant and Watkins testified that Pearlie came into town blowing the horn on her car as she drove up to the police station where they were. This corroborates Pearlie's statement that appellant told her to follow him into town, especially since she went to the city police station to report a homicide committed outside the city limits instead of looking for the sheriff or one of his deputies who normally would have been concerned. It also is strange that neither appellant nor the chief of police arrested her then although they took the pistol.

In appellant's brief, his counsel have set forth long quotations from Pearlie's testimony in two earlier trials in contrast with Pearlie's statement on this trial. These alleged prior inconsistent statements cannot be considered on this appeal because they were not introduced into evidence on the trial in which appellant was convicted but were attempted to be "wheelbarrowed" into the record of this case by filing them with the motion for a new trial. They were not considered by the jury and cannot be considered by this Court in reviewing the jury's verdict.

It is not the function of this Court to say whether the testimony of the prosecution or defense should have been believed in this case, but to say whether it was such that the jury could have believed either. It may be said that the evidence on either side is such that a jury would have been justified in believing it. The credibility of the witnesses is within the province of the jury to determine. The trial court was correct in submitting the case to the jury. Martin v. Commonwealth, 304 Ky. 661, 201 S.W.2d 551; Carr v. Commonwealth, 307 Ky. 207, 210 S.W.2d 778; Jones v. Commonwealth, Ky., 281 S.W.2d 920; Nix v. Commonwealth, Ky., 299 S.W.2d 609.

Judgment affirmed.