BTC LEASING, INC., a/k/a Bulk Transit Leasing Corp., Inc., Appellant,

v.

Billy R. MARTIN, Appellee.

Court of Appeals of Kentucky.

April 20, 1984.

As Modified On Rehearing Aug. 24, 1984.

Discretionary Review Denied by Supreme Court March 13, 1985.

M. Gail Wilson, Bertram & Wilson, Jamestown, for appellant.

James Frazer, Frazer & Jones, Monticello, for appellee.

Before McDONALD, REYNOLDS and WHITE, JJ.

McDONALD, Judge:

This appeal is about a houseboat subjected to a mechanics' or materialmen's lien and appellee Billy R. Martin's attempt to enforce that lien against the appellant, BTC Leasing, Inc., a/k/a Bulk Transit Leasing Corporation, Inc., a purchaser later in time to its creation. In examining the various statutes purportedly granting such a lien interest in the boat, we have concluded that Martin failed to assert his rights under the proper statute. It follows that BTC cannot, therefore, be charged with constructive notice of the lien. Accordingly, we reverse the judgment of the Russell Circuit Court.

Billy R. Martin acquired his interest in the houseboat, a craft sixty feet in length and equipped with a 135 horsepower Chrysler outboard motor, on or about December 1, 1978, when he filed a lien statement with the Wayne County Clerk. The basis of Martin's lien was for substantial repair and remodeling work done on the boat from November, 1977, to July, 1978, for which he had not been paid by its then owner, William Burkett. K.R.S. 376.270 and K.R.S. 376.360 were alternately cited in the lien statement as the statutory provisions creating the lien in Martin's favor. At this time, the houseboat, while located in Wayne County at the Conley Bottom Resort boat dock, was registered in Pulaski County. No notice of the lien was ever indicated on the registration statement, however, as those documents are generally not utilized for such purposes.

Within days of the initial filing of the lien, Martin sought to enforce the lien by intervening in an action concerning title to the houseboat pending against William Burkett in Wayne Circuit Court. (78–CI–199: *Cedar Lakes Foods of Tennessee, Inc. v. William Burkett*). By the time that dispute went to trial, the original plaintiff had withdrawn from the litigation to be replaced by Martin. This proceeding was vigorously contested by Burkett as the

first trial resulted in a deadlocked jury. A second trial held on August 24, 1982, reached a much different conclusion because Burkett chose not to defend the action. Consequently, the Wayne Circuit Court, on September 8, 1982, entered judgment against Burkett and specifically found that he was indebted to the appellee to the amount of $17,000, and that the lien against the houseboat was valid and enforceable through a sale by the Master Commissioner for Wayne County.

The most plausible explanation for Burkett's decision to discontinue his defense of the action in Wayne Circuit Court is that in the intervening two years between the first and second trials, he had completely divested himself of any interest in the houseboat in favor of his ex-wife, Carolyn Burkett Lynch. This was accomplished by a property division in a divorce action between them. The actual transfer of title to Carolyn Lynch apparently took place sometime in the latter half of 1980 or the early months of 1981 as her name was listed as the owner of record on a certificate of registration for the houseboat issued by the circuit court clerk of Pulaski County on March 3, 1981.

Shortly after acquiring title, Carolyn Lynch, despite the pendency of Martin's claim, removed the boat from Wayne County to Russell County where it was moored at Alligator Boat Dock Number 2 on Lake Cumberland. In the ensuing months, she then entered into negotiations with BTC Leasing, Inc., for the sale of the boat. As a preliminary to the final purchase, BTC tried to discover the existence of any liens or other encumbrances upon the houseboat. Unaware of its earlier history in Wayne County, BTC logically made no inspection of the records in that county. BTC did, however, research the clerk's records in both Russell and Pulaski Counties and got assurances of good. title from Carolyn Lynch herself. When these efforts produced no evidence of any cloud upon her title, BTC proceeded to buy the boat at a price of $27,000 on October 28, 1981.

BTC's possession of the boat remained undisturbed until early September, 1982. Then Martin received a favorable jury verdict in the suit to enforce the lien in Wayne County and was awaiting the actual entry of judgment. Realizing that the removal of the houseboat from Wayne County would render meaningless any forthcoming order for a commissioner's sale, Martin instituted this action before the Russell Circuit Court. Along with seeking a judicial sale in Russell Circuit Court, Martin requested and was granted a temporary restraining order, and later an injunction, prohibiting BTC from moving the boat from its dock on Lake Cumberland. Whether BTC could qualify as a bona fide purchaser which took without notice of the outstanding lien was identified as the one true issue which would be determinative of Martin's claim. Both parties moved for summary judgment. The Russell Circuit Court granted Martin's motion, concluding specifically that Martin's lien was properly filed with the Wayne County Clerk according to K.R.S. 376.270. As a result, BTC was charged with constructive notice of the lien and could not claim the status of a bona fide purchaser. A commissioner's sale in Russell County was ordered, but BTC promptly sought this appeal before the execution of that order.

BTC'S FIRST ASSIGNMENT OF ERROR CONTENDS THAT THE ENTRY OF SUMMARY JUDGMENT WAS IMPROPER DUE TO THE EXISTENCE OF A GENUINE ISSUE OF FACT.

This position is indeed odd in light of the fact that BTC also moved the trial court to utilize a summary judgment on its own behalf. Having taken the stance by summary judgment motion that there was no genuine issue of fact, we feel that BTC should not now be permitted to assume a completely inconsistent posture to defeat the decision of the trial court by claiming there was a genuine issue of fact. Additionally, the circumstances of this case clearly demonstrate that this is a dispute ideally suited to resolution by summary judgment proceeding. While BTC's brief makes vague references to unknown facts

concerning the manner in which Carolyn Burkett Lynch acquired title to the houseboat, those facts, even if admitted, bear no relation to the real issue, namely, whether BTC bought the boat without notice of Martin's lien, thus qualifying as a bona fide purchaser. This being essentially a question of law, and as the facts surrounding BTC's acquisition of the boat are undisputed, the trial court properly considered the case on a motion for summary judgment. *Bell v. Harmon,* Ky., 284 S.W.2d 812 (1955), and *Bonded Elevator, Inc. v. First National Bank of Louisville,* Ky., 680 S.W.2d 124 (1983).

> NEXT, BTC ASSERTS THAT THE TRIAL COURT ERRED IN ITS APPLICATION OF THE LAW REGARDING STATUTORY LIENS SO AS TO CHARGE BTC WITH CONSTRUCTIVE NOTICE OF MARTIN'S CLAIM TO THE HOUSEBOAT.

A survey of the numerous statutes creating such interests indicates that three separate types of liens are at least superficially applicable to the case now before the Court.

K.R.S. 376.270, lien on motor vehicle for repairs, storage, or accessories—filing of statement with county clerk, contains the first of these statutory grants. The statute generally makes provision for a lien on motor vehicles upon which the lienor has done repairs or furnished supplies. It should be noted that this is the statute relied upon by the Russell Circuit Court in granting Martin's request for a forced sale. As an alternative to K.R.S. 376.270, Martin in his lien statement also asserted an interest in the houseboat under K.R.S. 376.360(2) which also bestows a lien upon those who have performed repairs or given supplies to certain specified watercraft. Finally, K.R.S. 376.280, which authorizes the public sale of both motor vehicles and boats by those who are still owed for the provision of similar services, is also relevant. While there is a scarcity of case law and other interpretive materials concerning these enactments, what little does exist, when supplemented by the plain language of the statutes and common sense, reveals that only the last, K.R.S. 376.280, is applicable to the present situation. We conclude, however, for reasons hereinafter stated, that Martin failed to assert his interest under that statute and that BTC cannot be charged with constructive notice of the purported lien and therefore stands as a bona fide purchaser. Consequently, we reverse the judgment of the Russell Circuit Court.

■ Our determination that the trial court improperly utilized K.R.S. 376.270 to support Martin's claim on the houseboat is founded upon the simple proposition that such a vessel is not a motor vehicle as required by that statute. The lien granted in K.R.S. 376.270 is, by its clear and simple terms, available only to those individuals "engaged in the business of selling, repairing or furnishing accessories or supplies for *motor vehicles* " (emphasis added), and covers only "the reasonable or agreed charges for repairs, work done on accessories or supplies furnished for the *vehicle,* and for storing or keeping the *vehicle....* " (Emphasis added.) Under this statute possession of the vehicle is not a prerequisite for the existence of the lien which may be perfected and preserved by following the procedures set out in K.R.S. 376.010 and K.R.S. 376.080, the statutory guidelines for the creation and maintenance of mechanics' and materialmen's liens. While we must concede that Martin has indeed satisfied all these procedural requirements, we still cannot bestow upon him the protection of a lien under K.R.S. 376.270 as the houseboat involved in this dispute does not qualify as a "motor vehicle." Traditionally, Kentucky law has never been stretched to include watercraft within the meaning of that term. K.R.S. Chapter 281, for instance, characterizes a motor vehicle as:

> any motor propelled vehicle used for the transportation of persons or property on a public highway, including any such vehicle operated as a unit in combination with other vehicles, and including vehicles propelled by electric power obtained

from overhead wires whether operating over rails or otherwise....

K.R.S. 281.011(2). Clearly, a houseboat does not fall within the scope of this definition.

■ The essence of this definition has been incorporated into K.R.S. Chapter 376. For purposes of specifying the particular vehicles subject to the statutory lien provisions of K.R.S. 376.270 and K.R.S. 376.280, K.R.S. 376.281 states that the term " 'motor vehicle' shall include vehicles used or designed for navigation of or flight in the air, as well as those used or designed for operation on the public highways." The specific enlargement of this basic definition to include modes of air travel indicates that had the legislature intended it to also encompass watercraft, it would have added the appropriate language to the statute. Unlike K.R.S. 376.280 which was amended in 1952 for just that purpose, K.R.S. 376.281 has never undergone such an alteration.[1] As K.R.S. 376.281 serves as the basic definition of "motor vehicle" as used in K.R.S. 376.270, the primary statute relied upon by Martin, that statute cannot be read to create a lien in the houseboat subject to this litigation. Martin, therefore, must look elsewhere to defeat BTC's status as a bona fide purchaser.

One such alternative is contained in K.R.S. 376.360(2), liens on steamboats and other vessels for work and supplies, also cited in Martin's lien statement. In particular, K.R.S. 376.360(2) creates a lien in favor of persons who have furnished supplies and other materials or engaged in the repair of vessels. When read by itself, this statutory grant would appear applicable. However, subsection (1) of that same statute clearly identifies steamboats, brigs, schooners, sloops, and model barges as the only vessels encompassed by this encumbrance. Although the relevant statutes and case law provide no precise legal definitions of the various vessels enumerated in K.R.S. 376.360, we believe that reliance on the plain, everyday meaning of those terms indicates that a houseboat inescapably does not fall within its purview. A houseboat is distinguished from the enumerated vessels by its construction in such a manner as to be capable of serving as a residence.

Additionally, K.R.S. 376.390(2) mandates that these interests are subordinate to those of a subsequent purchaser taking without actual knowledge unless the suit for enforcement is brought within a year of the accrual of the cause of action or the lien is indicated on a vessel's enrollment papers. This latter stipulation which utilizes the process of enrollment as a means of notifying subsequent purchasers of the existence of a lien suggests that a vessel must be commercial in nature in order to benefit from the protections of K.R.S. 376.360. Enrollment is a federally created procedure. *See* 46 U.S.C.S. §§ 251 et seq. (1979), for the denotement of the national character of a ship engaged in the coasting trade. As the houseboat in this dispute is unquestionably a pleasure craft and therefore not subject to enrollment, we believe that Martin should not be allowed to rely upon K.R.S. 376.360 for the acquisition of a lien. To hold otherwise would be fundamentally unfair to subsequent purchasers of a vessel, such as BTC, as the absence of enrollment documents would deprive them of one of the chief means of obtaining notification of the existence of such an encumbrance.

---

1. Text of footnote from page 8.

We would note that during the pendency of this appeal, the Legislature has seen fit to make such an alteration in the statutes regarding mechanics' and materialmen's liens. Specifically, House Bill No. 686 of the 1984 Session of the Kentucky General Assembly (Kentucky Acts, Chapter ——) created a new section of KRS Chapter 376 reading: "As used in KRS 376.270 and 376.275, 'motor vehicle' shall include vessels used or designed for navigation or operation on waterways, rivers, lakes, and streams, as well as those used or designed for operation on the public highways." This recent enactment, however, became effective as of July 2, 1984, and is therefore of no value in support of appellee's claim to a materialmen's lien under KRS 376.270. Instead, this development points to the soundness of our conclusion that KRS 376.270, as written at the beginning of this litigation, did not authorize the creation of such an encumbrance in the houseboat.

■ From our review of the various statutes granting statutory liens, we have determined that only K.R.S. 376.280, sale of boat or motor vehicle for charges—advertisement of sale—definition of "boat," was intended to cover the property that is the subject of this appeal. Subsection (1) of that statute provides:

*Any boat* or motor vehicle *remaining in the possession* of a person who has made repairs, performed labor or furnished accessories or supplies therefor and to whom the charges for such repairs, labor, accessories or supplies has been owing for a period of more than thirty (30) days, may be sold to pay such deferred purchase money or charges. [Emphasis ours.]

In order to qualify for this type of a particular sale, watercraft must fall within the definition of the term "boat" as set forth in K.R.S. 376.280(2) which states:

The term "boat" as used in subsection (1) of this section, means *any watercraft not enumerated in subsection (1) of KRS 376.360* and sloops having an overall length of forty (40) feet or less. [Emphasis added.]

Distinctly, this extremely broad definition evidences a general intent that nearly all types of watercraft be included in the coverage afforded by this statute. Unless a potential lienor can demonstrate that the vessel in which he is asserting an interest falls within one of the narrow exceptions specified in subsection (2), K.R.S. 376.280(1) stands as the only remedy in the nature of a statutory lien for those seeking to recover for charges due on the repair and supply of boats. As we have already seen, the houseboat now in controversy does not fall within the purview of K.R.S. 376.360; nor is it a sloop of less than forty feet in length. It is therefore a "boat" subject to the public sale provided in K.R.S. 376.-280(1).

However, K.R.S. 376.280 is ultimately ineffective as a means of recovering the amount owed Martin by William Burkett. Most obviously, K.R.S. 376.280(1) stipulates that anyone seeking relief under this statute must retain possession of the boat that is to be sold. The record demonstrates that Martin never enjoyed the requisite possession of the boat.

This state of affairs is indeed unfortunate and results in a decision which might seem unduly harsh to Martin, but it would be more unfortunate and harsh for this court to accept his position and hold otherwise. The fact that Martin no longer meets the requirements to recover under K.R.S. 376.280 does not empower us to fashion a remedy for him by stretching the scope of either K.R.S. 376.270 or K.R.S. 376.360 to encompass this situation. This is the function of our legislature and Martin and others similarly situated should look to that body for the appropriate relief.

■ As a final comment, this court would also state its inclination to reverse the decision of the Russell Circuit Court even if Martin had been correct in his assertion that either K.R.S. 376.270 or K.R.S. 376.360(2) gave rise to the lien on his behalf. This conclusion is due to the fact that regardless of whether Martin had properly asserted and preserved the lien under those statutes, there is no reasonable means by which BTC could have obtained notice of that encumbrance. Prior to the purchase, BTC inspected the clerk's records in both Russell County, where the boat was located, and Pulaski County, where it was registered. To say that BTC was also charged with constructive notice of the records present in Wayne County, the place where the lien was actually recorded, and conceivably every other county in the Commonwealth, would be fundamentally unfair. Here, BTC had no cause whatsoever to believe that the houseboat had any connection with Wayne County. This is especially true in light of Martin's ability to protect his interest in the houseboat throughout the course of both the original action against William Burkett in Wayne County and then against BTC in Russell County. Having asserted the lien in Wayne County, Martin took no steps to prevent the boat's removal therefrom, thereby allowing its purchase by an unsuspecting buyer, herein

BTC. Judging from the rapidity with which Martin sought to enforce the lien in Russell County upon obtaining a judgment in his favor in the original action against William Burkett, it would also appear that Martin was well aware of the boat's whereabouts but simply took no steps to safeguard his own rights. In this situation, Martin did less than is necessary to protect his rights. We feel that we have no justification to redress Martin's grievances when to do so would result in harm to BTC, another innocent party. *Louisville Asphalt Co. v. Cobb*, 310 Ky. 126, 220 S.W.2d 110 (1949). So we hold that BTC should not be charged with constructive notice of Martin's interest in the houseboat.

LASTLY, IS BTC ESTOPPED FROM DISPUTING THE VALIDITY OF THE LIEN DUE TO THE PRINCIPLES OF RES JUDICATA?

As a final position in this appeal, appellee Martin has asserted that BTC may not dispute the validity of its lien on the houseboat as a result of the principles of res judicata. Martin apparently would maintain that that doctrine should result in a decision in his favor regardless of our earlier conclusion that neither of the statutes relied upon by Martin actually creates a lien. In support of this proposition, Martin makes reference to numerous cases regarding the operation of res judicata, most of which endorse the concept that a party will be precluded from raising an issue during the course of litigation if that same issue was raised or could have been raised with reasonable diligence during an earlier proceeding. *See, e.g., Barnett v. Commonwealth*, Ky., 348 S.W.2d 834 (1961); *Whittenburg Eng. & Const. Co. v. Liberty Mut. Ins. Co.*, Ky., 390 S.W.2d 877 (1965); *Norrell v. Elect. & Water Plant Bd.*, Ky.App., 557 S.W.2d 900 (1977); *Stephens v. Goodenough*, Ky., 560 S.W.2d 556 (1978); *Gregory v. Commonwealth*, Ky., 610 S.W.2d 598 (1980). While we would agree with the basic soundness of this principle and considering the fact that the validity of the lien was a fundamental question in both actions in Russell and Wayne counties, we cannot, however, accept Martin's ultimate

argument as to the decisive effect of res judicata. Other technical aspects of res judicata simply are not present in this case. Furthermore, general considerations of fairness have led us to conclude that it would be entirely inappropriate to apply the doctrine of res judicata.

 Stated succinctly, the fundamental principle of res judicata is as follows:

[A] final judgment rendered upon the merits ... by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

46 Am.Jur.2d *Judgments* § 394 (1969). The successful invocation of this doctrine is clearly then dependent upon the demonstration of each of the elements contained in the above definition, including the existence of a final judgment rendered upon the merits, an identity of the subject matter, and an identity of parties. *See also Newman v. Newman*, Ky., 451 S.W.2d 417, 419 (1970).

The appellee has satisfactorily established only the presence of an identity of subject matter, namely, the initial suit against William Burkett in Wayne Circuit Court and the action for enforcement of the lien against the appellant in Russell Circuit Court centered upon the issue of the lien's validity. We question whether the original judgment in Wayne Circuit Court is sufficiently "on the merits" so as to preclude its relitigation by the appellant. That judgment was rendered in default against William Burkett who by then had completely divested himself of any interest in the houseboat and had no dealings whatsoever with the appellant. We would be very reluctant to hold a judgment of such dubious quality as binding upon the appellant.

As there obviously can be no actual identity of parties as between William Burkett and the appellant, the factor of identity of parties could be satisfied only through a

finding of privity between those two parties. That we cannot do. While the concept of privity defies a precise, inflexible definition, a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity. This is to ensure that the interests of the party against whom res judicata has been asserted have been adequately represented by his purported privy at the initial trial of the cause of action. 46 Am.Jur.2d *Judgments* § 532 (1969). As stated in *Newark Insurance Company v. Bennett*, Ky., 355 S.W.2d 303, 304 (1962), the absolute identity of legal interest is fundamental to a finding of privity and the mere fact that two parties are interested in proving or disproving the same facts will not create privity.

The above-described factors clearly militate against a finding that the appellant and William Burkett were bound together as privies. At the time of the rendition of judgment against him in Wayne Circuit Court, Burkett no longer had any interest in the houseboat and therefore permitted a default judgment to be rendered against him. Instead, title to the houseboat had already been transferred from Carolyn Lynch to the appellant, who had no warning of either the outstanding lien or the appellee's suit for the judicial validation of that encumbrance. As a result, the appellant's interest in the houseboat received no representation at all on the part of William Burkett in the original action in Wayne Circuit Court. We therefore decline to hold the appellant to be in privity with William Burkett so as to be bound by the rules of res judicata.

Appellee also fails to demonstrate that the application of res judicata would be consistent with either the policies underlying the doctrine or considerations of fundamental fairness. Essentially, res judicata is justifiable by reference to two distinct policies: the public interest in bringing an end to litigation and the individual's interest in freedom from multiple and vexatious litigation of the same cause. *Barnett v. Commonwealth*, 348 S.W.2d at 835. From our perspective, we cannot see how either

of these interests would be served by the use of res judicata in this case. The fact that the appellee is faced with the relitigation of the validity of the lien is solely the product of his own inaction. During the long pendency of his original suit in Wayne County, the appellee took no steps to protect his interest in the houseboat, thereby allowing its removal to Russell County and its eventual sale to the wholly innocent appellant. This Court finds it difficult to lend a sympathetic ear to the appellee's request that we save him from vexatious litigation for which he himself is responsible. Likewise, we do not believe the public interest in terminating litigation will be advanced by preventing the further consideration of the validity of the appellee's lien. To do so would in effect give judicial approval to a result contrary to our conception of the law to the great prejudice of the appellant. Such a result is to be avoided, especially as we cannot conceive of the further pursuit of this issue beyond the current proceedings. In short, we remain unconvinced that the application of res judicata in the instant appeal would be conducive to any private or public end. *See Floyd County Board of Education v. Layne*, Ky., 474 S.W.2d 397 (1971).

As a final comment, we would also observe that res judicata is essentially a "rule of justice ... [that] is to be applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice." 46 Am.Jur.2d *Judgments* § 402 (1969). Without belaboring the facts, the use of res judicata in the instant appeal would work such a manifest injustice. We are here confronted with a wholly innocent appellant who purchased the houseboat in good faith after having exercised every reasonable effort to learn of the existence of the appellee's interest. Conversely, the appellee has done far less than what was necessary to protect his interest, thereby permitting the growth of the current legal quagmire. In order to save that situation, he would now have this Court apply the doctrine of res judicata to

give binding effect to a lien which has no statutory basis. Taken to its logical conclusion, the appellee's argument ultimately stands for the proposition that no party could achieve the status of a bona fide purchaser of personalty subject to a mechanics' or materialmen's lien, as long as that lien had been recorded and received judicial sanction. Indeed, this would be the result even when, as in the case at bar, the purchaser had no means of obtaining notice of the lien and the lien had absolutely no statutory basis. We choose not to achieve such an incongruous and unfair result through the application of res judicata. We hold the appellant to be a bona fide purchaser of the houseboat and entitled to all the protection that status affords.

The judgment of the Russell Circuit Court is reversed.

All concur.