TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00124-CV







Texas Workers' Compensation Commission, the Subsequent Injury Fund,


and Todd Brown in His Official Capacity as Executive Director of 


the Texas Workers' Compensation Commission, Appellants




v.




The City of Bridge City, Texas, and the Texas Municipal League 


Intergovernmental Risk Pool, Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 92-14599, HONORABLE JOSEPH H. HART, JUDGE PRESIDING








 The Texas Workers' Compensation Commission, its executive director Todd
Brown, and the Subsequent Injury Fund (1) appeal from a declaratory judgment and permanent
injunction ordered by the trial court in a suit brought by the City of Bridge City, Texas, and the
Texas Municipal League Intergovernmental Risk Pool ("TML"). We will reverse the trial-court
judgment, dissolve the injunction, and render the declaratory judgment we believe the trial court
should have rendered. Tex. R. App. P. 81(c).



THE CONTROVERSY


 Under the Texas Workers' Compensation Act, the legislature established a four-tier
system for the determination of claims. Subchapter B provides first for the informal resolution
of claims through a non-adversarial conference conducted by a "benefit review officer" who may
render an interlocutory order that benefits be paid or that they not be paid. The informal
conference is a prerequisite to any further proceeding toward resolution of the claim. See Tex.
Lab. Code Ann. §§ 410.021-.024 (West 1995) ("Act"). If issues remain unresolved after the
conference, the parties may agree to resolve the claim by arbitration under Subchapter C; failing
agreement in that regard, a party may elect to determine the claim by a contested-case proceeding
under the provisions of Subchapter D. Id. §§ 410.101-.121 (arbitration); §§ 410.151-.169
(contested case). The third tier is established in Subchapter E, providing for an administrative
appeal from the hearing officer's contested-case decision to an appeals panel. Id. §§ 410.201-.208. Review outside the Commission is authorized in Subchapter F, establishing a cause of
action for judicial review of the appeals-panel decision or the hearing officer's decision if the
appeals panel fails timely to render a decision. Id. §§ 410.251-.256. 

 The insurance carrier must commence making any payments ordered by the benefit-review officer. If the order is reversed or modified after arbitration or the contested-case
proceeding, however, the carrier is entitled to reimbursement from the subsequent-injury fund for
any overpayment. Id. § 410.025(c). And if the appeals-panel decision affirms the carrier's duty
to pay, but the decision is finally modified or reversed by a reviewing court, the carrier is entitled
to reimbursement from the fund for any overpayment. Id. § 410.205(c). Apparently, these
provisions are construed so that the carrier is not entitled to recover any overpayment made during
the period between the date of the contested-case decision requiring payment and the date of the
appeals-panel decision affirming that decision, even though the latter decision is reversed on
judicial review.

 Threatened by administrative penalties if they do not pay benefits during the only
period when reimbursement is not expressly secured by the statutory scheme, the City (a self-insurer) and TML sued for declaratory judgment that the Act is unconstitutional. (2) The trial court
held the scheme unconstitutional on the grounds indicated below and issued a permanent
injunction against enforcement of the scheme. The Commission, its executive director, and the
Subsequent Injury Fund appeal.



THE TRIAL-COURT JUDGMENT


 The trial court held the statutory scheme unconstitutional on the following grounds:



1. The requirement of immediate payment of a decision and order of benefit
contested case hearing officer during the pendency of an appeal to the Appeals
Panel [Tex. Labor Code Ann. § 410.169] . . . and Commission Rule 142.16(e)
through (g) violates Article 1, § 19, of the Texas Constitution because it limits
the City's property rights in a fundamentally unfair manner.


2. This pre-payment without reimbursement scheme violates Article 1, § 13, of
the Texas Constitution because it is an unreasonable interference with access
to the courts. The scheme imposes unreasonable financial barriers on court
access and fails to provide a meaningful access and fails to provide a
meaningful legal remedy to the Plaintiffs.


3. Article 1, § 17, of the Texas Constitution is also violated by this
administrative scheme. The Plaintiffs hold the disputed funds in trust for the
citizens of the City of Bridge City, Texas and the administrative requirement
that the City's funds be forfeited prior to a final decision, without hope of
recovery, is a taking in violation of the Texas Constitution.


4. The statutory scheme also violates Article 3, § 61, because it fails to provide
suitable laws for the administration of workers' compensation insurance
administration.



DISCUSSION AND HOLDINGS


I.


 In their first point of error, appellants contend the trial court erred because a
municipal corporation is not a "citizen" or "person" within the meaning of the bill of rights
constituting Article I of the state constitution, specifically sections 13, 17, and 19 upon which the
trial court based its declaration that the statutory scheme is unconstitutional. Tex. Const. art. I,
§§ 13, 17, 19. We believe the trial court erred. Municipal corporations and other government
subdivisions derive their existence and powers from legislative enactments and are subject to
legislative control and supremacy. Consequently, they cannot use the sword of the due-process-of-law and other provisions of Article I to invalidate the laws that govern them. See McGregor
v. Clawson, 506 S.W.2d 922, 929 (Tex. Civ. App.--Waco 1974, no writ); Harris County v.
Dowlearn, 489 S.W.2d 140, 145 (Tex. Civ. App.--Houston [14th Dist.] 1973, writ ref'd n.r.e.);
Boyett v. Calvert, 467 S.W.2d 205, 210 (Tex. Civ. App.--Austin 1971, writ ref'd n.r.e.), appeal
dismissed for want of federal question sub nom., Anderson v. Calvert, 405 U.S. 1035 (1972); see
generally 2 Eugene McQuillin, Municipal Corporations § 4.20 (3d ed. 1988). Concerning the
corresponding guarantees in the Bill of Rights in the federal constitution, the rationale and the
result apply without distinction between a municipality's governmental and proprietary functions. 
City of Trenton v. New Jersey, 262 U.S. 182, 192 (1925). 

 The City and TML cite Love v. City of Dallas, 40 S.W.2d 20 (Tex. 1931), in
support of the proposition that a municipality may obtain invalidation of a legislative enactment
on the basis of Article I, section 17 of the State Constitution which forbids the taking of property
without adequate compensation being first paid by the State. In Love, the court stated as follows:



Since the Constitution, art. VIII, § 3, contemplates that districts shall be organized
and taxes levied for the education of scholastics within the districts, it is obvious
that the education of nonresident scholastics is not within their ordinary functions
as quasi-municipal corporations; and under the authorities cited the Legislature is
without power to impose such an obligation on them, without just compensation.



Id. at 27. The Love opinion does not mention any section of Article I of the constitution. The
decision rests instead on Article VIII, section 3, a provision outside the bill of rights and its
guarantees to "persons" and "citizens." Thus, Love is merely one of a class of cases holding that
the legislature's supremacy and control over municipalities and other agencies of the state do not
extend so far as to permit the legislature to infringe upon rights given municipalities and other
subdivisions or agencies of the State, as such, in some express constitutional provision outside
Article I. See, e.g., Nueces County v. People's Baptist Church, 860 S.W.2d 627, 630 (Tex.
App.--Corpus Christi 1993, writ granted); Durish v. Texas State Bd. of Ins., 817 S.W.2d 764, 767
(Tex. App.--Texarkana 1991, no writ). No such constitutional provision exists here.

 TML comes within the principles just discussed. It was created by former article
8309h of the Texas Revised Civil Statutes, entitled Workman's Compensation Insurance for
Employees of Political Subdivisions. See Act of May 10, 1973, 63d Leg., R.S., ch. 88, § 17,
1973 Tex. Gen. Laws 198 (Tex. Rev. Civ. Stat. Ann. art. 8309h, since repealed and codified at
Tex. Lab. Code Ann. §§ 504.001-.003, .011-.018, .051-.052, .071-.073 (West 1995)). The
relevant statute authorizes "two or more political subdivisions to establish a joint insurance fund"
to provide workers' compensation benefits for employees of the subdivision. Tex. Lab. Code
Ann. § 504.016. The legislature may, without violating any provision of Article I or any other
article made known to us, alter or repeal these statutory provisions at any time.

 The fourth basis for the trial court's judgment, an asserted violation of Article III,
section 61, of the state constitution, is not a constitutional provision within the bill of rights
constituting Article I. It lies outside Article I and is a kind of guarantee to municipalities similar
to the class involved in Love, People's Baptist Church, and Durish. See Love, 40 S.W.2d at 27;
People's Baptist Church, 860 S.W.2d at 360; Durish, 817 S.W.2d at 767. Section 61 does not,
however, confer upon municipalities any judicially enforceable right. It is, rather, a political
guarantee. Section 61 provides as follows:



The Legislature shall have the power to enact laws to enable cities, towns, and
villages . . . to provide Workmen's Compensation Insurance, including the right
to provide their own insurance risk for all employees; and the Legislature shall
provide suitable laws for the administration of such insurance in the said
municipalities and for payment of the costs, charges, and premiums on policies of
insurance and the benefits to be paid thereunder.



Tex. Const. art. III, § 61 (emphasis added).

 The terms of section 61, addressed to the legislature, appear to be permissive only,
notwithstanding the word "shall" in the second clause. Id. interp. commentary (West 1984); see
also 1 George D. Braden et al., The Constitution of the State of Texas: An Annotated and
Comparative Analysis 284-89 (1977).

 In any case, the question of what is a "suitable" law is not within the power of a
court to decide. By its very nature, it is a political question committed to the legislature because
it calls for pure public-policy decisions beyond a court's competence. See Davis v. City of
Lubbock, 326 S.W.2d 699, 714 (Tex. 1959). We are aware that the supreme court undertook to
determine what was not an "efficient" system of public schools in applying Article VII, section
1 to judge the constitutionality of a legislative enactment. See Edgewood Indep. Sch. Dist. v.
Kirby, 777 S.W.2d 391 (Tex. 1989). The analogy is inescapable. It is, however, the only
instance of which we are aware in which a court has undertaken such a task. It seems obvious
that only the legislature has the facilities to investigate and ascertain the state of affairs in the
complex field of workers' compensation, to make the necessary adjustment of competing interests,
to identify the objectives and purposes the state should pursue in the matter, and to compose the
new rules of conduct by which these are to be achieved. On the other hand, it appears that a
court, in a single case involving a few disputing parties, is singularly lacking in such facilities and
unfit for the task. We hold, therefore, that the trial court exceeded its power in deciding that the
statutory scheme is not "suitable" and, therefore, unconstitutional under Article III, section 61. (3)
 
See State v. Reyna, 333 S.W.2d 832, 838-39 (Tex. 1960).



II.


 If we be mistaken in any of the foregoing, we hold the statutory scheme is not
unconstitutional on the ground that it omits to provide for reimbursement of sums paid during the
period between a hearing officer's contested-case decision and the decision of an appeals panel. 
Our holding extends to each of the four constitutional provisions given in the trial-court judgment
as the grounds upon which its finding of unconstitutionality rested.

 The statutory scheme comes to a reviewing court with certain presumptions that
stand until the opposite is made to appear by one who would challenge the scheme's
constitutionality: the challenger must point out precisely how a constitutional principle has been
violated; every reasonable intendment and presumption will be made in favor of constitutionality;
if there could exist a state of facts justifying the scheme, the reviewing court will assume its
existence; and the legislature is presumed to be familiar with the State's regulation and the conduct
of workers' compensation insurance operations. Massachusetts Indem. & Life Ins. Co. v. Texas
State Bd. of Ins., 685 S.W.2d 194, 109 (Tex. App.--Austin 1985, writ ref'd n.r.e.).

 Under each of the four constitutional grounds named in the trial-court order, we
believe the issue reduces to one of substantive due process of law, an inquiry whether the
omission to provide for reimbursement in one stage, while providing for it in the others, is
rationally related to a legitimate state interest in a highly regulated, complex, economic field. Id.
at 113-14. We believe the State's interest in securing payment to an injured worker as soon as
practical is as obvious as a worker's private interest in that regard. On the other hand, the State
is bound to weigh the likelihood that the injured worker is not legally entitled to the sums he
claims. Assurance against that likelihood is itself a legitimate state interest of equal weight, even
as it is simultaneously a matter in which the insurance carrier has a keen interest of its own; the
availability of insurance is essential for the Act to work at all. See generally Middleton v. Texas
Power & Light Co., 185 S.W. 556 (Tex. 1916), aff'd, 249 U.S. 152 (1919). 

 The statutory provisions for the contested-case proceeding are distinctly trial-type
procedures designed to result in determinations made according to the facts and the law. They
include adequate notice, the opportunity to present evidence, legal argument and rebuttals thereto,
representation by counsel, a decision based only upon evidence introduced into the record of the
hearing, and a complete record consisting of a transcript of testimony and arguments, together
with the documentary evidence and all other papers filed in the proceeding. See Tex. Lab. Code
Ann. §§ 410.151-.168; Administrative Procedure Act, Tex. Gov't Code Ann. §§ 2001.051-.147
(West 1995). There can be no question that these provisions exceed the minimum requirements
of procedural due process of law. Bernard Schwartz, Administrative Law § 5.1, at 203-04 (2d ed.
1984).

 It is obvious that the interim between the time a benefit-review officer orders
payment to the injured worker and the time such order is modified after a contested-case hearing
may be lengthy, given the minimum due process requirements mentioned above and the additional
protections, such as provisions for discovery and continuances, that apply in contested cases
conducted under the Administrative Procedure Act. Consequently, section 410.032(b) provides
reimbursement protection for the insurer. Similarly, a lengthy period may expire before a
reviewing court finally reverses or modifies an appeals-panel decision awarding benefits;
accordingly, section 410.205(c) provides reimbursement protection for the insurer.

 The situation is distinctly different, however, concerning the interim period
between the date a hearing officer issues his or her decision in a contested case and the date an
appeals panel makes it decision. A party filing a request for appeal must do so not later than the
fifteenth day after the date on which the decision of the hearing officer is received; the respondent
must file a written response with the appeals panel not later than the fifteenth day after service of
the request for appeal; and the appeals panel must give its decision in writing not later than the
thirtieth day after the response is filed, or the decision of the hearing officer becomes final and
tantamount to the final decision of the appeals panel. Act § 410.204.

 We conclude the legislature could rationally adjust the competing public and private
interests in the manner set out in the statutory scheme. The insurer's interest in protecting itself
against legally erroneous payment orders is secured to a large degree by two factors. Firstly, the
contested-case proceedings are conducted by legally trained persons (4) with elaborate trial-type
procedures designed to assure legally correct decisions based upon the law and the facts. The risk
of an erroneous decision is reduced accordingly. Secondly, the interim between the contested-case
decision and the appeals-panel decision is designedly short, thereby reducing the period in which
the carrier may be required to make the interlocutory payments, and thus limiting the maximum
amount of such payments, without an express provision for reimbursement should the carrier
ultimately prevail on judicial review.

 And the "omission" of which appellees complain must be judged in context. The
face of the Act reflects innumerable compromises and adjustments made in the course of the
legislative process. The claimed "omission" appears to be only one of these. While appellees
conceive themselves injured by the "omission" to provide reimbursement for the limited payments
made in the short period indicated, an injured employee might feel much the same by having to
bear the entire risk of loss over and above the maximums allowed by section 408.061, the denial
of all benefits under section 408.082 when the duration of disability is a week or less, or any of
the various definitions and other qualifications that are applicable in determining whether and to
what extent an employee may receive benefits. These compromises and adjustments do not
amount to a denial of due process of law. See Middleton v. Texas Power & Light Co., 249 U.S.
152, 163 (1919).

 We therefore reverse the trial-court judgment, dissolve the permanent injunction,
and render a declaratory judgment that section 410.169 of the Texas Labor Code and Commission
rule 142.16 (e) through (g) are constitutional. 



 

 John Powers, Justice

Before Justices Powers, Kidd and B. A. Smith

Reversed and Rendered

Filed: May 24, 1995 

Publish

1.   "The subsequent injury fund is a special fund in the state treasury." Tex. Lab. Code
Ann. § 403.006 (West 1995).
2.   Appellants served the Attorney General with a copy of the petition pursuant to section
37.006 of the Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. § 37.006
(West 1986). The Attorney General declined to intervene.
3.   If the Congress or a state legislature has passed an inadequate statute, why should it
not be revised by judicial construction? If the statute is one that is manifestly unwise, harsh
or out-of-date, why should it not be abrogated by the exercise of the power of judicial
review? . . .


 The objections to such alluring but deceptive plausibilities are more deep-seated than might appear at first blush. For in the end what would eventuate
would be a substantial transfer of legislative power to the courts. A function
more ill-suited to judges can hardly be imagined, situated as they are, and
should be, aloof from the political arena and beholden to no one for their
conscientious conduct. Such a course would also denigrate the legislative
process, since it would tend to relieve legislators from having to account to the
electorate. The outcome would inevitably be a lessening, on the one hand, of
judicial independence and, on the other, of legislative responsibility, thus
polluting the blood stream of our system of government. We should be on guard
against any such deliberate or unwitting folly.


Justice John M. Harlan, Thoughts at a Dedication: Keeping the Judicial Function in Balance,
49 A.B.A. J. 943, 944 (1963).

4.   Act § 410.152.